OPINION
 ROGERS, J.
{¶ 1} Defendant-Appellant, Mark A. Kesler, appeals a judgment of the Seneca County Court of Common Pleas, convicting him of seven counts of unlawful sexual conduct with a minor and one count of attempted unlawful sexual conduct with a minor. On appeal, Kesler argues that the trial court erred when it permitted Plaintiff-Appellee, the State of Ohio, to use other acts evidence in violation of Evid.R. 404(B); that the trial court erred in permitting the introduction of his admission of sexual conduct with the alleged victim; that the trial court erred when it permitted the State to amend the indictment the morning of trial; and, that his conviction was against the manifest weight of the evidence and the evidence was insufficient as a matter of law to prove his convictions. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In October of 2005, the Seneca County Grand Jury returned an eleven count indictment, charging Kesler with two counts of rape with a force specification in violation of R.C. 2907.02(A)(1)(b),(B), felonies of the first degree; one count of attempted unlawful sexual conduct with a minor in violation of R.C. 2923.02(A) and 2907.04(A),(B)(2), a felony of the fourth degree[1]; one count of gross sexual imposition in violation of R.C. 2907.05(A)(4),(B), a felony of the fourth degree; and, seven counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A),(B)(2), felonies of the third degree.[2] Kesler subsequently entered pleas of not guilty to all of the counts in the indictment.
 {¶ 3} In November of 2005, Kesler voluntarily waived his right to a jury trial. Thereafter, the trial court ordered that the matter proceed to a bench trial. Additionally, Kesler filed a motion in limine to exclude evidence on Kesler's prior bad acts, which the trial court overruled.
 {¶ 4} On the first day of the trial, the State moved to amend the indictment and bill of particulars to change the date on the second count of rape in the indictment. Kesler objected to the State's motion, but the trial court granted the motion. At trial, the following testimony was heard:
 {¶ 5} The State's first witness was Sergeant Randy Marfia of the Republic Police Department. Sergeant Marfia testified that he had received a report of sexual abuse involving M.S., during the summer of 2005, from Chief Fredrick Stevens of the Republic Police Department. Sergeant Marfia continued that Chief Stevens informed him that Jennifer S., M.S.'s mother, contacted Chief Stevens and advised Chief Stevens of sexual assaults that were allegedly occurring for approximately a year and a half at Kesler's residence in Republic, Ohio. Sergeant Marfia also noted that Chief Stevens informed him that the victim was M.S. and that the suspect was Kesler.
 {¶ 6} Sergeant Marfia also testified about the investigation he conducted. Specifically, Sergeant Marfia testified that he interviewed M.S. the next day and testified that M.S. was born on November 1, 1990. Sergeant Marfia also testified that he interviewed Kesler, who was born on January 25, 1964, at the Tiffin Police Department in August of 2005. Sergeant Marfia continued that prior to interviewing Kesler, he advised Kesler of his Miranda rights and had Kesler sign a form indicating that he understood those rights. Next, Sergeant Marfia testified, over Kesler's objection, that when he told Kesler that he was there to talk to him about "a complaint involving a household member", Kesler stated "well, I think it would be about M.S. * * * I've been through this crap before." (Trial Tr. p. 47). Sergeant Marfia continued, over Kesler's objection, that when asked "if [Kesler] had ever performed oral sex on [M.S.,] [h]e said that he did." (Trial Tr. p. 48). Also, Sergeant Marfia noted, over Kesler's objection, that when asked "if there was any penetration, [Kesler] said he didn't think", but admitted that "there's a possibility of tongue or finger penetration." (Trial Tr. p. 48). Finally, on cross-examination, when asked "In your * * * interview of Mr. Kesler, how many sexual encounters with [M.S.] did he admit", Sergeant Marfia answered that Kesler "initially admitted to one. Then, he specifically admitted to two." (Trial Tr. p. 59).
 {¶ 7} The State's next witness was M.S., the alleged victim. M.S. testified that "[Kesler] was like a father to [her]" (trial tr. p. 69) and noted that Kesler had helped her with school work, had given her a CD player and money, and had taken her shopping for clothes. M.S. noted that she had lived in Kesler's home with her mother, Kesler, and Kesler's wife and son between March of 2004 and August of 2005. M.S. also testified that in July of 2003, when she was twelve years old, Kesler had taken her to Findlay, Ohio in his semi truck and that while in a parking lot, Kesler had taken off her shorts and put his fingers inside her vagina two to three inches.
 {¶ 8} M.S. continued that about a week after this incident, when she was twelve years old and while watching a movie in the "media room" at Kesler's residence, at approximately 8 p.m., Kesler pushed her shorts aside and put his fingers inside her vagina. (Trial Tr. p. 79). M.S. also noted that during this second incident, that no one was around and that Kesler put lotion on her back, legs, and chest area including her breasts.
 {¶ 9} M.S. also testified that during the spring of 2004, while she was in her bedroom at Kesler's residence, which was adjacent to Kesler's bedroom, Kesler pushed her shorts aside and placed his fingers inside her vagina and his mouth and tongue on her vaginal area. M.S. also noted that this incident occurred at approximately midnight and that her mother was asleep in a bedroom which was located downstairs from M.S.'s bedroom in Kesler's residence.
 {¶ 10} M.S. also testified that during the summer of 2004, when she was thirteeen years old, Kesler put his fingers inside her vaginal area. M.S. also noted that this incident occurred in her bedroom in Kesler's residence at approximately midnight, while "[she] was getting ready to go to sleep." (Trial Tr. p. 89). M.S. also indicated that Kesler's wife was asleep and her mother was downstairs when this incident occurred.
 {¶ 11} M.S. also testified that just after her fourteenth birthday in 2004, Kesler pushed her shorts aside, put his fingers in her vaginal area, and placed his mouth and tongue on her vagina. M.S. noted that this incident occurred in her bedroom in Kesler's residence and during the "[n]ighttime." (Trial Tr. p. 91).
 {¶ 12} M.S. also testified that around Thanksgiving of 2004, while in her bedroom at Kesler's residence, Kesler pushed her shorts aside and attempted to put his penis inside of her vagina, but he was unsuccessful. M.S. noted that this incident occurred during the "[n]ighttime" (trial tr. p. 93) while "[she] was getting ready to go to sleep" (trial tr. p. 94) and that "[Kesler's] wife was asleep and [her] mom was downstairs." (Trial Tr. p. 95).
 {¶ 13} M.S. also testified that on Thanksgiving of 2004, while in her bedroom at Kesler's residence, Kesler pushed her shorts aside, put his fingers in her vagina, and placed his mouth on her vaginal area. M.S. indicated that right before this incident occurred, Kesler was watching television in the "media room" while she was "laying (Sic.) down in [her] room." (Trial Tr. p. 97).
 {¶ 14} M.S. also testified that around January of 2005, while in her bedroom at Kesler's residence, Kesler pushed her shorts aside and put his fingers in her vagina, his mouth on her vaginal area, and his tongue inside her vagina. M.S. continued that during this incident, which occurred at approximately midnight, she attempted to keep her legs closed, but Kesler forced them open.
 {¶ 15} M.S. also testified that around July 8 or 9, 2005, while in her bedroom at Kesler's residence, Kesler pushed her shorts aside, put his fingers in her vagina, and placed his mouth on and tongue inside her vagina. M.S. also indicated that this incident happened around 10 p.m. and that "[Kesler's] wife was in bed and [her] mother was * * * downstairs." (Trial Tr. p. 101).
 {¶ 16} M.S. testified that there was one more incident during the end of July of 2005. M.S. noted that while she was in her bedroom at Kesler's residence, Kesler pushed her shorts aside, put his fingers in her vagina, and placed his mouth on and tongue inside her vagina. M.S. also indicated that this incident occurred "at nighttime" (trial tr. p. 103) and that "[Kesler's] wife was asleep and [her] mom was downstairs." (Trial Tr. p. 103).
 {¶ 17} M.S. also testified that she told Kesler's wife about the events. Additionally, M.S. stated that she waited to tell anyone what happened "[b]ecause [she] was scared." (Trial Tr. p. 105). .
 {¶ 18} On cross-examination, M.S. agreed that she testified to "either ten or eleven different sexual activity situations or incidents" that involved Kesler, but noted that those were not all of the sexual incidents that she had with Kesler. (Trial Tr. p. 109). M.S. also noted that the prosecutor, victim's advocate, and Sergeant Marfia told her that it was important if the incidents between Kesler and her occurred before she turned thirteen years old. M.S. also stated that she did not believe that Kesler was touching himself while engaging in the sexual activities with her.
 {¶ 19} The State's next witness was Dawn Kesler, Kesler's daughter-in-law. Dawn testified that while she was married to Kesler's son, she lived in Kesler's residence. Dawn continued that while her husband was working third shift, Kesler would enter her bedroom, which was two rooms away from Kesler's bedroom. Dawn continued that, approximately three times, at around 1 or 2 a.m., she was woken up by Kelser "touching [her] legs" and attempting to "touch between [them]." (Trial Tr. p. 152). Dawn also indicated that she felt Kesler's fingers penetrate her vagina and that Kesler tried to put his mouth on her vaginal area. Dawn also noted that Kesler "probably took off my shorts or something" to gain access to her private areas during these incidents. (Trial Tr. p. 153).
 {¶ 20} On cross-examination, Dawn noted that she was eighteen years old when these incidents occurred with Kesler and that she was hopefully going through a divorce with Kesler's son "pretty soon." (Trial Tr. p. 155).
 {¶ 21} The State's next witness was Jennifer S., M.S.'s mother. Jennifer testified that M.S. and Kesler were "like a father and daughter." (Trial Tr. p. 160). Jennifer noted that Kesler provided M.S. with clothes and personal items, played sports with M.S., and went to M.S.'s band and choir concert the previous year in Tiffin, Ohio. Jennifer also testified that Kesler would get upset when M.S. did not sleep in her bedroom, which was upstairs near Kesler's bedroom. Jennifer also stated that M.S. informed her of inappropriate conduct between M.S. and Kesler after she and M.S. moved out of Kesler's residence. On cross-examination, Jennifer noted that she stayed on the first floor of Kesler's residence because she had surgery on her knees which did not allow her to go up and down stairs.
 {¶ 22} The State's final witness was Investigator Ronald Green, who worked for the Seneca County Prosecutor's Office. Investigator Green testified that he was involved in the investigation of the alleged sexual contact between Kesler and M.S. Investigator Green indicated that prior to being interviewed in August of 2005, Kesler was advised of his Miranda rights and indicated that he understood them. Investigator Green also testified that during the interview, "[Kesler] admitted to having sexual activity with [M.S.]." (Trial Tr. p. 190). Investigator Green continued that during the interview, "[Kesler] admitted to having oral sex with [M.S.]." (Trial Tr. p. 190). Investigator Green also noted that during the interview, Kesler indicated that if he had penetrated M.S. "it would either have been [with his] tongue or [his] fingers." (Trial Tr. p. 191).
 {¶ 23} At the conclusion of the State's case-in-chief, Kesler moved under Crim.R. 29 for acquittal on each of the counts of the indictment, which the trial court overruled.
 {¶ 24} Kesler's first witness was Rebecca Elchert, one of M.S.'s friends. Rebecca testified that M.S. and Jennifer S. moved into her parent's house, after a fire destroyed Kesler's residence. Rebecca also noted that when she observed M.S. and Kesler together, "[M.S.] would follow [Kesler] around" (trial tr. p. 201) and that M.S. was "[n]ot very truthful." (Trial Tr. p. 203).
 {¶ 25} Kesler's second witness was Kathleen Kesler, Kesler's wife. Kathleen stated that during the late summer of 2003, M.S. and M.S.'s mother would come to her residence between three and four times a week. Kathleen testified that she did not remember Kesler taking M.S. with him in his semi truck. Kathleen also noted that in 2003, Kesler took M.S. and other people including herself out for M.S.'s birthday in the family's limousine. Kathleen also testified that the distance from her and Kesler's bedroom door to M.S.'s bedroom door was approximately five feet; that she slept in the same bed as Kesler; and, that she would get up at least once or twice every night. Kathleen also noted that, at times, she had woken up and discovered that Kesler was no longer in bed with her. Kathleen continued that when this occurred she would find Kesler in M.S.'s bedroom and that Kesler and M.S. would be talking. Kathleen also noted that during these conversations, Kesler would either be sitting on M.S.'s bed or standing in M.S.'s bedroom.
 {¶ 26} On cross-examination, Kathleen testified that the doorway that connected her bedroom and M.S.'s bedroom was covered by a blanket. Kathleen also noted that "[M.S.] would follow [Kesler] around like a puppy" and that she thought "it's kind of strange." (Trial Tr. p. 239).
 {¶ 27} After Kathleen testified, Kesler rested and renewed his motions for acquittal under Crim.R. 29, which the trial court overruled.
 {¶ 28} At the conclusion of the trial, the trial court found Kesler guilty of all seven counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A),(B)(2), felonies of the third degree[3], and one count of attempted unlawful sexual conduct with a minor in violation of R.C. 2923.02(A) and 2907.04(A),(B)(2), a felony of the fourth degree[4], and found Kesler not guilty of the two counts of rape with a force specification and the one count of gross sexual imposition.
 {¶ 29} In February of 2006, the trial court adjudicated Kesler a sexual predator and sentenced him to eighteen months in prison for the attempted unlawful sexual contact with a minor count and to five years in prison for each count of the unlawful sexual conduct with a minor all to be served concurrently with one another for a total of five years in prison. The trial court also notified Kesler that his post release control of up to five years was mandatory in this case.
 {¶ 30} It is from this judgment Kesler appeals, presenting the following assignments of error for our review:
 Assignment of Error No. I The trial court erred when it permitted the State of Ohio to use the other acts of Appellant at the trial in violation of Evidence Rule 404(B).
 Assignment of Error No. II The trial court erred when it permitted the introduction of Appellant's admission in violation of the US Constitution, the Ohio Constitution, and the Rules of Evidence over the continuing objection of Counsel for Appellant.
 Assignment of Error No. III The trial court violated the Appellant's right to due process under the Fourth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 10, of the Constitution of the State of Ohio, when it permitted the State of Ohio to amend the Indictment the morning of trial.
 Assignment of Error No. IV The conviction in the trial court should be reversed because it is against the manifest weight of the evidence and because the evidence supporting it was insufficient as a matter of law to prove the conviction beyond a reasonable doubt.
 Assignment of Error No. I {¶ 31} In his first assignment of error, Kesler argues that the trial court erred in permitting the State to use "other acts" evidence in violation of Evid.R. 404(B). Specifically, Kesler asserts that the trial court erred in allowing the State to use allegations made by Dawn Kesler. We disagree.
 {¶ 32} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Evid.R. 404(B). Such evidence may be admissible, however, for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B). The exceptions allowing the evidence "must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." State v. Broom (1988),40 Ohio St.3d 277, paragraph one of the syllabus.
 {¶ 33} Nevertheless, the admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. State v. Issa, 93 Ohio St.3d 49, 64,2001-Ohio-1290. Thus, our inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary issues about which Kesler complains. State v.Barnes, 94 Ohio St.3d 21, 23, 2002-Ohio-68.
 {¶ 34} The Ohio Supreme Court has stated the rationale that supports the admission of such modus operandi evidence:
 A certain modus operandi is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character. To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share certain common features with the crime in question.
State v. Lowe, 69 Ohio St.3d 527, 531, 1994-Ohio-345.
 {¶ 35} At trial, Kesler's attorney objected to Dawn Kesler's testimony regarding an incident during which Kesler entered her bedroom and began touching Dawn. As noted above, Dawn testified that while she was married to Kesler's son, she lived in Kesler's residence. Dawn continued that while her husband was working third shift, Kesler would enter her bedroom and would be woken up by Kesler was "touching [her] legs" and attempting to "touch between [them]." (Trial Tr. p. 152). Dawn also indicated that she felt Kesler's fingers penetrate her vagina; that these incidents with Kesler occurred "[l]ike three times" (trial tr. p. 153); and, that Kesler tried to put his mouth on her vaginal area. Dawn further noted that she was eighteen years old when these incidents occurred.
 {¶ 36} Specifically, Kesler complains the trial court should not have allowed Dawn to testify about the alleged incidents between her and Kesler, because the alleged incidents occurred when she was an adult and at least five years earlier than the alleged incidents with M.S. However, Dawn's testimony contains other details that support admissibility. Dawn testified that Kesler entered her bedroom late at night, when her husband was not around, removed her clothing, and began touching her. Also, Dawn noted that Kesler's fingers penetrated her vagina and that he attempted to put his mouth on her vaginal area.
 {¶ 37} Reviewing Dawn's and M.S.'s testimony, we find that Dawn's testimony describes events that share enough common features with and are sufficiently related to the incidents with M.S. to survive the test established in Lowe. Dawn's testimony was therefore within the trial court's discretion to admit and we cannot find that the trial court abused its discretion when it admitted Dawn's testimony. Accordingly, Kesler's first assignment of error is overruled.
 Assignment of Error No. II {¶ 38} In his second assignment of error, Kesler argues that the trial court erred in permitting the introduction of his admission over his objection. Specifically, Kesler argues that the State failed to prove the corpus delicti of the crime before his confession was admitted into evidence. We disagree.
 {¶ 39} The corpus delicti of a crime is essentially the fact of the crime itself. It consists of two elements: (1) the act and (2) the criminal agency of the act. State v. Van Hook (1988), 39 Ohio St.3d 256,261; State v. Maranda (1916), 94 Ohio St. 364, paragraph one of the syllabus. To admit an alleged confession, there must be "some evidence outside of the confession that tends to prove some material element of the crime charged[,]" i.e. the corpus delicti. Maranda, 94 Ohio St. 364, paragraph two of the syllabus. In other words, "[a] mere confession without corroboration by the presentation of other evidence outside the confession which tends to prove some material element of the crime charged is not admissible." State v. Eames (Mar. 7, 1994), 3rd Dist. No. 14-93-3, citing State v. Black (1978), 54 Ohio St.2d 304. However, this independent evidence need not equal proof beyond a reasonable doubt.Maranda, supra; see, also, Black, 54 Ohio St.2d 304 at syllabus.
 {¶ 40} Although the corpus delicti rule is well established in Ohio, the practicality of the rule has come into question in light of the modern procedural safeguards afforded to criminal defendants. See,Van Hook, 39 Ohio St.3d at 261. As such, courts do not apply the rule with "dogmatic vengeance." Id. at 261. The burden on the state to produce "some evidence" of the corpus delicti is minimal. Id. Direct and positive proof that a crime was committed is not required; circumstantial evidence may be relied upon. State v. Nobles (1995),106 Ohio App.3d 246, 262, citing Maranda, 94 Ohio St. at 371. However, "there must be some proof * * * tending to prove the fact that a crime was committed." Maranda, 94 Ohio St. at 371.
 {¶ 41} Here, Kesler argues that prior to the admission of his confession, there was no testimony as to what constituted the alleged sexual assault. Specifically, Kesler asserts that there was no testimony as to the dates, the time frames, or details of the incidents that described "the act" or "the criminal agency of the act" prior to the admission of his confession.
 {¶ 42} We agree that the better practice is to make the presentation of the evidentiary basis, or corpus delicti, prior to the offer of the confession. This avoids the necessity of a mistrial if the evidence of the corpus delicti is later found to be deficient. However, the trial court has complete discretion to control the presentation of evidence and interrogation of witnesses. State v. Wilbon, 8th Dist. No. 82934,2004-Ohio-1784, citing Evid.R. 611(A).
 {¶ 43} Evid.R. 611(A) provides,
 The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
 {¶ 44} "Essentially, Evid.R. 611 is a 'control' rule in which the trial court is given the discretion to control the mode and order of witness interrogation and evidence presentation to achieve the goals listed therein, including an effective interrogation and presentation in order to ascertain the truth." State v. Davis (1992),79 Ohio App.3d 450, 453-54 citing State v. Williamson (May 6, 1991), 12th Dist. No. CA90-06-065.
 {¶ 45} Although the confession in this case was offered prior to any presentation of evidence which established the existence of any charged offense, the subsequent testimony of M.S. as to the alleged acts of the defendant cured any error and rendered the confession admissible.
 {¶ 46} Furthermore, the trial of this case was presented to the court rather than to a jury. Therefore, the danger of creating a situation which would require a mistrial was minimal, because the trial judge, as the fact-finder, is generally assumed to be able to disregard inadmissible evidence and to consider only that evidence which has been properly admitted.
 {¶ 47} Accordingly, Kesler's second assignment of error is overruled.
 Assignment of Error No. III {¶ 48} In his third assignment of error, Kesler argues that the trial court violated his due process rights in allowing the State to amend the indictment the morning of trial.
 {¶ 49} Crim.R. 7(D) addresses the situation of amending indictments and states: "The court may at any time before, during or after a trial amend the indictment * * * in form or substance * * * with the evidence, provided no change is made in the name or identity of the crime charged."
 {¶ 50} The rule clearly permits errors of omission to be corrected during or after the trial, as long as such amendment makes no change in the name or identity of the crime charged. R.C. 2941.05 also addresses the sufficiency of the indictment, and provides, in pertinent part:
 In an indictment * * * each count shall contain * * * a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved.
 {¶ 51} The Supreme Court of Ohio has also held that the State may amend an indictment provided the name or identity of the crime charged does not change. State v. O'Brien (1987), 30 Ohio St.3d 122, 125-26. The Court reasoned that the accused should not be "misled or prejudiced by the omission of such element from the indictment." Id. at 128. A reversal of the conviction is only warranted if, from considering the entire proceeding, the appellate court finds a failure of justice. See Crim.R. 7(D).
 {¶ 52} In the instant case, at trial, the State moved to amend the indictment and bill of particulars to change the date on the second count of rape in the indictment. Kesler objected to the State's motion and the trial court granted the motion. However, since Kesler was found "not guilty" on the second count of rape, Kesler's argument is moot. SeeState v. Summerville (Mar. 26, 1999), 11th Dist. No. 97-L-268.
 {¶ 53} Accordingly, Kesler's third assignment of error is without merit and is overruled.
 Assignment of Error No. IV {¶ 54} In his fourth assignment of error, Kesler argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Because "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different", we will address each separately. State v. Thompkins (1997), 78 Ohio St.3d 380, 1997- Ohio-52, paragraph two of the syllabus.
 {¶ 55} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as recognized in State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355.
 {¶ 56} As noted above, the trial court found Kesler guilty of all seven counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A),(B)(2), felonies of the third degree[5], and one count of attempted unlawful sexual conduct with a minor in violation of R.C.2923.02(A) and 2907.04(A),(B)(2), a felony of the fourth degree.[6] We begin with the seven counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A),(B)(2), felonies of the third degree.[7]
 {¶ 57} R.C. 2907.04 provides, in pertinent part:
 (A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
 (B) Whoever violates this section is guilty of unlawful sexual conduct with a minor.
 * * *
 (3) Except as otherwise provided in division (B)(4) of this section, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree.
 (4) If the offender previously has been convicted of or pleaded guilty to a violation of section 2907.02, 2907.03, or 2907.04 of the Revised Code or a violation of former section 2907.12 of the Revised Code, unlawful sexual conduct with a minor is a felony of the second degree.
 {¶ 58} The culpability level of "knowingly" is defined in R.C.2901.22(B). R.C. 2901.22(B) provides:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 {¶ 59} As noted above, Sergeant Marfia testified that the alleged victim, M.S., was born on November 1, 1990, and that Kesler was born on January 25, 1964. After reviewing the testimony of M.S. and viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements for seven counts of unlawful sexual conduct with a minor proven beyond a reasonable doubt. Accordingly, we find that there was legally sufficient evidence to support Kesler's convictions of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A),(B)(3).
 {¶ 60} Kesler was also found guilty of one count of attempted unlawful sexual conduct with a minor in violation of R.C. 2923.02(A) and2907.04(A),(B)(2), a felony of the fourth degree.[8] In addition to the aforementioned provisions of R.C. 2907.04(A),(B)(3), R.C. 2923.02(A) provides "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 61} Again, we have reviewed the evidence and testimony and viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of attempted unlawful sexual conduct with a minor proven beyond a reasonable doubt. Accordingly, we find that there was legally sufficient evidence to support Kesler's conviction of attempted unlawful sexual conduct with a minor in violation of R.C. 2923.02(A) and R.C.2907.04(A),(B)(3).
 {¶ 62} Kesler also argues that his convictions were against the manifest weight of the evidence. When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 63} Here, Kesler argues that M.S.'s testimony was in contradiction to her prior statements and that Sergeant Marfia testified that M.S. gave conflicting statements as to the time of the alleged incidents. Nevertheless, that information was before the trier of fact and credibility is primarily a matter for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Clearly, the trial court's ruling reflects that the court believed M.S.'s testimony. In our view, this is not a case where the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 64} Having found that Kesler's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, Kesler's fourth assignment of error is overruled.
 {¶ 65} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
[1] The specific language of the indictment provided, in pertinent part:
 Count Three
During the fall of 2004 in Seneca County, Ohio, MARK A. KESLER, SR., being eighteen years of age or older, did attempt to engage in sexual conduct with Jane Doe, not the spouse of Mark A. Kesler, Sr., when Mark A. Kesler, Sr. knew that Jane Doe was older than thirteen (13) years of age but less than sixteen (16) years of age, or was reckless in that regard wherein the said Mark A. Kesler, Sr. was more than ten (10) years older than the said Jane Doe.
This being in violation of R.C. Section 2923.02(A) and2907.04(A),(B)(2) and against the peace and dignity of the State of Ohio.
ATTEMPTED UNLAWFUL SEXUAL CONDUCT WITH MINOR-A Felony of the Fourth Degree* * *.
(Oct. 13, 2005 Indictment p. 2).
Although the indictment specified R.C. 2907.04(A),(B)(2), which is a misdemeanor of the first degree, the elements of unlawful sexual conduct with a minor in the indictment and the degree of the offense were identical to those of R.C. 2907.04(A),(B)(3), a felony of the third degree, less the applicable reduction under R.C. 2923.02(E). See, e.g.,State v. Walters (June 26, 1998), 6th Dist. No. H-97-025. Even though Kesler was indicted for and found guilty of a violation of R.C.2923.02(A) and R.C. 2907.04(A),(B)(2) instead of R.C. 2923.02(A) and R.C. 2907.04(A),(B)(3), we find that Kesler was not prejudiced by this result. The purpose of an indictment is to give the accused person notice that he or she must defend against certain criminal charges and to afford protection from future prosecution for the same offense.State v. Sellards (1985), 17 Ohio St.3d 169, 170. See, also, R.C.2941.05 and Crim.R. 7(B). Because the indictment contained the elements and degree of R.C. 2923.02(A) and R.C. 2907.04(A),(B)(3), we find that Kesler was placed on notice of the charge he was to defend against. Additionally, neither party brought this discrepancy to our attention.
[2] The language of the indictment provided similar language for each of the seven counts. The only substantial difference is the identification of the time period in which each violation is alleged. For example, Count Eight begins "During the Summer of 2004" while Count Five begins "During the Spring of 2004." The specific language of the indictment provided, in pertinent part:
 Count Five
During the Spring of 2004 in Seneca County, Ohio, MARK A. KESLER, SR., being eighteen years of age or older did engage in sexual conduct with Jane Doe, not the spouse of Mark A. Kesler, Sr., the said Mark A. Kesler, Sr. knowing that the said Jane Doe was thirteen (13) years of age but less than sixteen (16) years of age or was reckless in that regard wherein the said Mark A. Kesler, Sr. was more than ten (10) years older than the said Jane Doe.
This being in violation of R.C. Section 2907.04(A),(B)(2) and against the peace and dignity of the State of Ohio.
UNLAWFUL SEXUAL CONDUCT WITH MINOR-A Felony of the Third Degree* * *.
(Oct. 13, 2005 Indictment pp. 2-3).
Although the indictment specified R.C. 2907.04(A),(B)(2), which is a misdemeanor of the first degree, the elements of unlawful sexual conduct with a minor in the indictment and the degree of the offense were identical to those of R.C. 2907.04(A),(B)(3). See, e.g.,Walters, supra. Even though Kesler was indicted for and found guilty of multiple violations of R.C. 2907.04(A),(B)(2) instead of R.C.2907.04(A),(B)(3), we find that Kesler was not prejudiced by this result. The purpose of an indictment is to give the accused person notice that he or she must defend against certain criminal charges and to afford protection from future prosecution for the same offense.Sellards, 17 Ohio St.3d at 170. See, also, R.C. 2941.05 and Crim.R. 7(B). Because the indictment contained the elements and degree of R.C.2907.04(A),(B)(3), we find that Kesler was placed on notice of the charge he was to defend against. Additionally, neither party brought this discrepancy to our attention.
[3] See discussion in ft.n. 2.
[4] See discussion in ft.n. 1.
[5] See discussion in ft.n. 2.
[6] See discussion in ft.n. 1.
[7] Based on our discussion in ft.n. 2, we will review this assignment of error as though the indictment properly identified the statutory section as 2907.05(A),(B)(3).
[8] Based on our discussion in ft.n. 1, we will review this assignment of error as though the indictment properly identified the statutory section as 2907.05(A),(B)(3).