[Cite as *State v. Kapp*, 2009-Ohio-5081.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 1-09-12

    v.

RICHARD KAPP,                      O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Allen County Common Pleas Court
Trial Court No. CR2007 338

**Judgment Affirmed**

Date of Decision:    September 28, 2009


APPEARANCES:

    *F. Stephen Chamberlain*  for Appellant

    *Jana E. Emerick*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Richard O. Kapp, Sr., appeals the judgment of the Allen County Court of Common Pleas convicting him of two counts of rape and one count of gross sexual imposition, and ordering him to serve two consecutive life terms in prison as well as a consecutive five-year prison term. On appeal, Kapp argues that the trial court erred in declining to exclude hearsay statements made by the victim, and that the trial court erred in declining to grant a mistrial on the basis of alleged discovery violations by the State. Based upon the following, we affirm the judgment of the trial court.

{¶2} In October 2007, the Allen County Grand Jury indicted Kapp on two counts of rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree, with specifications that the victim was under ten years of age, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree. The indictment stemmed from an incident during which Kapp allegedly engaged in oral sex with and digitally penetrated his five-year-old granddaughter, M.E.

{¶3} In November 2007, Kapp filed a motion to suppress statements he made to law enforcement officers following the incident and a motion suggesting he was not competent to stand trial.

{¶4} In December 2007, the trial court found Kapp incompetent to stand trial.

{¶5} In November 2008, the trial court found that Kapp had been restored to competency and was competent to stand trial.

{¶6} In January 2009, the trial court overruled Kapp's motion to suppress and the case proceeded to jury trial, at which the following testimony was heard.

{¶7} Brenda E. testified that Kapp was her father and she was M.E.'s mother; that, in September 2007, she, M.E., and her husband, Donald E., lived in a trailer next door to Kapp's trailer; that, on the evening of September 8, 2007, M.E. was next door at Kapp's trailer to visit; that she wanted M.E. to come home, so she walked over to Kapp's trailer and went inside without knocking; that Kapp was sitting on the floor with his pants undone, and M.E.'s pants and underwear were down around her ankles; that Kapp got up, held his pants up, and ran into the bathroom; that she yelled at Kapp "[w]hat did you do to my daughter, you S.O.B. What did you do? She's your granddaughter" (trial tr., p. 32); that Kapp responded "nothing" (Id.); that Kapp offered no explanation for why his pants were undone or why M.E.'s pants and underwear were down; that she asked M.E. what had happened and M.E. replied "nothing, mommy, nothing" (Id. at 41); that she believed she appeared noticeably upset because M.E. told her to "calm down" (Id. at 48); that she took M.E. home and observed that her vagina was abnormally

red; that she told Donald what she had observed, and he went over to Kapp's trailer; and, that she called the police and took M.E. to the hospital.

{¶8} Donald testified that, on September 8, 2007, Brenda came into the trailer crying and holding M.E.; that Brenda told him that she had seen Kapp and M.E. with their pants down; that he became very upset and went over to Kapp's trailer; that Kapp put his head down and started crying as soon as he saw him; that he asked Kapp what he did, and he replied "I don't have a girlfriend. I don't have a girlfriend" (Id. at 52); that he told Kapp he was sick, and Kapp kept his head down and would not look at him; that Kapp offered no explanation for the situation; that he attempted to punch Kapp, but missed and put a hole in the wall of the trailer; that Kapp did not say anything to him except that he did not have a girlfriend; that he went back to his trailer and spoke to the police; and, that he then accompanied Brenda and M.E. to the hospital.

{¶9} Deputy Brett Rider of the Allen County Sheriff's Office testified that, on September 8, 2007, he was dispatched to a child sex abuse complaint; that, initially, M.E.'s demeanor was loud and bubbly, however, when he inquired about what had happened with Kapp, her demeanor changed, and she climbed into her mother's lap and would not speak above a whisper; and, that, after he finished speaking to M.E., he went over to Kapp's trailer.

{¶10} Investigator Sandra Miehls of the Allen County Sheriff's Office testified that, on September 8, 2007, she was dispatched to a child sex abuse complaint; that Deputy Rider was already present when she arrived at Kapp's trailer; that, before she could say anything, Kapp told her, "I can't watch kids" (Id. at 68); that she asked Kapp what had happened, and Kapp just shook his head; that Kapp then stated, "Kids ask for it. She wanted sex" (Id. at 68); that Kapp made comments of that nature throughout the interview, including, "[M.E.] came to visit me [and] she wanted it" (Id.), "I haven't had a girlfriend in a long time. Kids want it" (Id.), "[M.E.] asked for it. She wanted it – sex." (Id. at 69); that Kapp also said, "give me a gun. I want to shoot myself" (Id.); that she asked Kapp if he had touched M.E., and he nodded his head yes; that she asked Kapp if he had touched M.E. in a sexual manner, and he nodded his head yes; that she asked Kapp where he had touched M.E., and he replied "privates" (Id.); that she asked Kapp if he had sexual intercourse with M.E., and he replied, "No. How could I? She's too little" (Id.); that she asked Kapp with what he had touched M.E.'s vagina, and he replied "fingers, penis" (Id.); that Kapp also stated he put his tongue into M.E.'s vagina and put his finger into her vagina "a little bit" (Id. at 70, 85); that Kapp stated several times that he needed a girlfriend and had not had a girlfriend in a long time; that he stated several times that he was sorry and would move from the area so it would not happen again; and, that she then arrested Kapp.

{¶11} Karen Hatfield, a registered nurse at Lima Memorial Hospital, testified that she was trained as a sexual assault nurse examiner (hereinafter "S.A.N.E."); that, when a child is brought into the facility for a sexual assault examination, she first assesses the child's temperature, pulse, and respirations, and inquires of the parents whether the child has experienced any health problems, hospitalizations, or possible genital injuries; that she then asks the child why he or she was brought into the facility. Thereafter, Hatfield attempted to testify as to what M.E. told her during the course of the medical exam, and Kapp objected to the testimony on the basis that it was hearsay, and that the hearsay exception for statements made for purpose of medical treatment did not apply because no evidence was provided that M.E. had suffered any injury. The trial court overruled Kapp's objection, and Hatfield testified that she asked M.E., "what happened tonight," and M.E. immediately replied, "she was at grandpa's and that grandpa had pulled her pants and underpants down and then pulled his pants and underpants down and sat on the floor. He asked her to sit on the floor. She said that he pushed her down several times on the floor. She kept getting back up. Then she told me that he got on top of her and pulled his thing out and put his thing in her mouth and in her thing. She told me that she smacked him in the face and then he hit her thing" (Id. at 95-96); that she asked M.E. what her "thing" meant, and M.E. pointed to her genital area (Id. at 98); that she physically

-6-

examined M.E. and did not notice anything unusual; that she completed a rape kit; that, at M.E.'s follow-up appointment, Brenda informed her that she believed Kapp had genital herpes; that M.E. tested negative for herpes and other sexually transmitted diseases; that the majority of instances of sexual assault leave no physical signs; and, that sexually transmitted diseases are not always transferred when someone has sexual contact with another.

{¶12} Subsequent to Nurse Hatfield's testimony, the State rested. Thereafter, Kapp moved for a mistrial on the basis of a discovery violation. Specifically, Kapp contended that the State had failed to disclose that a rape kit had been completed prior to Nurse Hatfield's testimony, and that this evidence was required to be disclosed pursuant to Crim.R. 16. The trial court overruled Kapp's motion on the basis that this evidence was not exculpatory, as the kit had never been tested, and also found that the kit was referred to in multiple places in the medical records disclosed to Kapp, giving him sufficient notice of its existence. Kapp then moved for acquittal pursuant to Crim.R. 29, which the trial court overruled. Thereafter, the defense declined to present any evidence and rested.

{¶13} Subsequently, the jury found Kapp guilty of both counts of rape and the count of gross sexual imposition. The trial court ordered Kapp to serve a mandatory sentence of life in prison, without parole, on each rape conviction, and

to serve a five-year prison term on the gross sexual imposition conviction, with all sentences to be served consecutively. Additionally, the trial court designated Kapp to be a Tier III sex offender.

{¶14} It is from his conviction and sentence that Kapp appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED WHEN IT DID NOT EXCLUDE THE HEARSAY STATEMENTS OF THE MINOR CHILD UPON OBJECTION BY THE DEFENDANT.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL TO THE DEFENDANT FOR DISCOVERY VIOLATIONS MADE BY THE STATE OF OHIO.**

*Assignment of Error No. I*

{¶15} In his first assignment of error, Kapp contends that the trial court erred in declining to exclude hearsay statements of M.E. upon his objection. Specifically, Kapp argues that Nurse Hatfield should not have been permitted to testify as to the statements M.E. made to her about what occurred during the incident because the statements were testimonial in nature and were not made for medical diagnostic purposes. We disagree.

{¶16} The admission or exclusion of evidence "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary

decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Kesler*, 3d Dist. No. 13-06-09, 2006-Ohio-6340, ¶33. Accordingly, our review is limited to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably. Id., citing *State v. Barnes*, 94 Ohio St.3d 21, 23, 2002-Ohio-68.

{¶17} The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." Concerning the Sixth Amendment, the United States Supreme Court has held that "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." *Crawford v. Washington* (2004), 541 U.S. 36, 68. Although the Court did not define the term "testimonial," it gave as examples "all ex parte in-court testimony or its functional equivalent; extrajudicial statements contained in formalized testimonial materials (e.g., affidavits, depositions, prior testimony, confessions); and a class of statements that are made " '"under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."' "" *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶60, quoting *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, ¶19, quoting *Crawford*, 541 U.S. at 51-52. In *Muttart*, the Supreme Court of Ohio recognized

that, " "'[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law * * * and as would an approach that exempted such statements from Confrontation Clause scrutiny all together.'" " 2007-Ohio-5267, at ¶59, quoting *Stahl*, 2006-Ohio-5482, at ¶16, quoting *Crawford*, 541 U.S. at 68; see, also, *Davis v. Washington* (2006), 547 U.S. 813.

{¶18} Evid.R. 803(4) provides that the hearsay rule will not exclude "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment[,]" even where the declarant is available as a witness. In *Muttart*, supra, the Supreme Court of Ohio specifically considered situations involving a child's statement made to a S.A.N.E. nurse and the applicability of Evid.R. 803(4), finding that "[s]tatements made to medical personnel for purposes of diagnosis or treatment are not inadmissible under *Crawford*, because they are not even remotely related to the evils which the Confrontation Clause was designed to avoid." (Citations omitted.) 2007-Ohio-5267, at ¶63.

{¶19} Further, *Muttart* held that, "[i]n cases in which a statement was made for purposes of medical diagnosis or treatment, the question is not whether the

statement is reliable; the presumption is that it is. The salient inquiry here is not [the child's] competency but whether her statements were made for purposes of diagnosis and treatment rather than for some other purpose." 2007-Ohio-5267, at ¶47. In determining the child's purpose in making the statements, the Supreme Court of Ohio directed courts to consider the following nonexhaustive list of factors: "(1) whether the child was questioned in a leading or suggestive manner, (2) whether there is a motive to fabricate, such as a pending legal proceeding such as a 'bitter custody battle,' and (3) whether the child understood the need to tell the physician the truth." (Citations omitted.) 2007-Ohio-5267, at ¶49.

{¶20} Here, the record does not suggest that M.E. was questioned in a leading or suggestive matter. In fact, Nurse Hatfield testified that she merely asked M.E., "what happened tonight?" and that M.E. immediately told her what had happened. Additionally, Nurse Hatfield testified that she "just let [M.E.] talk" and let her take the lead in the conversation. (Trial tr., p. 108). Additionally, Kapp does not allege that M.E. or her parents had any motive to fabricate the accusations, nor is any motive apparent from the record. Finally, Nurse Hatfield testified that her inquiries of M.E. took place in the medical facility and were preceded by assessments of her temperature, pulse, and respirations. Thus, the evidence suggests that M.E. knew she was in a medical setting at the time of her disclosures and that her statements would be used for purposes of medical

diagnosis and treatment. Thus, we find that, considering the factors set forth in *Muttart*, supra, M.E.'s purpose in making the statements about the incident with Kapp was for medical diagnosis and treatment, and, consequently, the statements fell under the exception to the hearsay rule set forth in Evid.R. 803(4). It follows that, as the statements satisfied a hearsay exception, the trial court did not err in declining to exclude the statements.

**{¶21}** Accordingly, we overrule Kapp's first assignment of error.

*Assignment of Error No. II*

**{¶22}** In his second assignment of error, Kapp contends that the trial court erred in declining to grant a mistrial despite alleged discovery violations made by the State. Specifically, Kapp argues that the mistrial should have been granted because the State failed to disclose prior to trial that Nurse Hatfield had completed a rape kit. We disagree.

**{¶23}** We review a trial court's decision regarding a Crim.R. 16 discovery sanction under an abuse of discretion standard. *State v. Gibson*, 3d Dist. No. 1-06-74, 2007-Ohio-3345, ¶12. An abuse of discretion implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶24}** Crim.R. 16 governs discovery and inspection, and provides, in pertinent part:

**(B) Disclosure of evidence by the prosecuting attorney**

**(1)     Information subject to disclosure.**

**\* \* \***

**(d) Reports of examination and tests. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, made in connection with the particular case, or copies thereof, available to or within the possession, custody or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney.**
**\* \* \***

**(E) Regulation of discovery**

**(3) Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.**

Crim.R. 16(B)(1)(d), (E)(3).

{¶25} The Supreme Court of Ohio has held that the State's violation of Crim.R. 16 is only reversible "'when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice.'" *State v. Orsborne*, 3d Dist. No. 1-06-94, 2007-Ohio-5776, ¶44, quoting *State v. Jackson*,

107 Ohio St.3d 53, 2005-Ohio-5981, ¶131, citing *State v. Parson* (1983), 6 Ohio St.3d 442, 445.

{¶26} Here, Kapp argues that the trial court should have granted his motion for a mistrial because the State failed to disclose prior to trial that Nurse Hatfield had completed a rape kit. Kapp contends that the State violated its duty to provide him with "reports of examination and tests" as required by Crim.R. 16, and that knowledge of the completion of the kit would have aided his defense if analysis of the kit revealed a lack of trace evidence. However, as stated by the trial court in overruling Kapp's motion for a mistrial, the rape kit was referenced in multiple places in the medical records disclosed to Kapp, giving him sufficient notice of its existence. This fact negates Kapp's argument that the State willfully failed to disclose the kit's existence, and that he suffered prejudice as a result. Additionally, it is difficult for Kapp to argue that he suffered prejudice regarding the rape kit, given that M.E.'s accusations were corroborated by testimony that Kapp admitted to touching M.E.'s vagina with his penis and to putting his tongue and finger into her vagina. Even further, as stated by the trial court, although the kit was completed, it was never sent to the laboratory to be tested for trace evidence. Consequently, Kapp cannot demonstrate that disclosure of the kit's existence prior to trial would have aided in his defense—as it is unknown whether the test results would have been favorable or unfavorable to him. Thus, we do not

find that the trial court erred in declining to grant a mistrial, as Kapp demonstrated neither a discovery violation nor resulting prejudice.

{¶27} Accordingly, we overrule Kapp's second assignment of error.

{¶28} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**