[Cite as *State v. Perkins*, 2009-Ohio-6722.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  13-09-14

      v.

WILLIAM H. PERKINS,               O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  13-09-15

      v.

WILLIAM H. PERKINS,               O P I N I O N

      DEFENDANT-APPELLANT.

**Appeal from Seneca County Common Pleas Court**
**Trial Court Nos. 08CR0158 and 08CR0208**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:    December 21, 2009**

APPEARANCES:

    *Craig M. Jaquith*  for Appellant

    *Derek DeVine*  for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-Appellant, William H. Perkins ("Perkins") appeals the judgment of the Seneca County Court of Common Pleas, finding him guilty of aggravated robbery, trafficking in drugs, and other related felonies. On appeal, Perkins claims that the trial court erred when it limited his cross-examination of a witness at trial and when it ordered that he pay restitution without specifying the recipients in the judgment entry. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} In August 2008, the Seneca County Grand Jury issued an eight-count indictment against Perkins for an armed robbery of The Medicine Shoppe Pharmacy in Tiffin, Ohio, for the theft of oxycodone (a Schedule II controlled substance) from the establishment, for the sale and use of the drugs obtained in the robbery, and for destroying and tampering with evidence associated with the crimes. Perkins was indicted for: Count One – breaking and entering in violation of R.C. 2911.13(A), a felony of the fifth degree; Count Two – aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, with a firearm specification in violation of R.C. 2941.145; Count Three – complicity to tampering with evidence in violation of R.C. 2923.03(A)(2) and 2921.12(A)(1), a felony of the third degree; Count Four – aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(a); Count Five – receiving stolen

property in violation of R.C. 2913.51, a felony of the fourth degree; Count Six – aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fourth degree; Count Seven – tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree; and, Count Eight – incidents of corrupt activity, in violation of R.C. 2923.32(A)(1), a felony of the first degree ("pattern of corrupt activity charge").[1]

{¶3} Perkin's first trial was held during six days in December 2008. Two witnesses, Andrea Ford and Angela Wolfe, testified as accomplices after entering into plea agreements with the State. Ms. Ford testified that she was engaged to Perkins and that they had a child together. She further testified that she, Perkins, and Ms. Wolf made plans to rob The Medicine Shoppe in order to obtain pills containing oxycodone. On June 23, 2008, Ms. Ford used Ms. Wolfe's car to drive Perkins to Tiffin, and she waited outside in the car while he took his gun and went into the pharmacy. After the robbery, they drove back to their trailer in Clyde where they placed the pills into baggies for sale. Ms. Ford also testified about burning the evidence from the robbery and obtaining spray paint in order to cover up the maroon front bumper of the car that was used for the crime.

---

[1] In September 2008, a separate indictment was issued for receiving stolen property, which charge was interlineated into the original indictment as Count Five, and the original Count Five, which had alleged the same offense, was dismissed. The two indictments resulted in two separate trial-court case numbers, 08 CR 158 and 08 CR 0208, but the two cases were consolidated before trial. As a result, there are two appeal numbers associated with this appeal, 13-09-14 and 13-09-15.

{¶4} Ms. Wolfe testified that she sold a portion of the pills that Perkins had obtained after the robbery, including a sale to an individual who was acting as a confidential informant for the Tiffin Police Department. Subsequently, she made several more trips to Perkin's and Ms. Ford's trailer, with the knowledge of the police, in order to obtain additional information. Based on this information, a search warrant for the trailer was obtained and the police recovered oxycodone, drug paraphernalia, and additional evidence.

{¶5} Other witnesses also testified, including the two employees from The Medicine Shoppe who described the robber by the clothes he was wearing and his approximate height and weight. They could not positively identify the robber because of the concealing clothing he wore, but they testified that he was armed with a handgun.

{¶6} On December 29, 2008, the jury convicted Perkins of aggravated possession of drugs and aggravated trafficking in drugs, and acquitted him of breaking and entering. The jury was not able to reach a verdict concerning the remaining five counts, which were scheduled for retrial.

{¶7} In February 2009, a second trial was held on four of the remaining counts in the indictment. The State dismissed the pattern of corrupt activity charge, and retried Perkins on the charges of aggravated robbery, receiving stolen

property, tampering with evidence, and complicity to tampering with evidence. The jury returned guilty verdicts on all four counts at issue in the second trial.

{¶8} A sentencing hearing was held on March 5, 2009, and the trial court sentenced Perkins to a total of sixteen years and three months in prison. The trial court also ordered Perkins "to pay restitution in the amount currently totaling $17,017.22." (March 6, 2009 Nunc Pro Tunc Judgment Entry of Sentencing.)

{¶9} It is from this judgment that Perkins appeals, presenting the following two assignments of error for our review.

### First Assignment of Error

**The trial court erred when it improperly limited Mr. Perkin's cross-examination of Andrea Ford, in violation of his rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and by Section 10, Article I of the Ohio Constitution.**

### Second Assignment of Error

**The trial court erred in imposing a sentence that contains an order of restitution without identification of the individual or entity entitled to receive such restitution.**

{¶10} In his first assignment of error, Perkins complains that the trial court erred during the second trial when it sustained the State's hearsay objection to having Ms. Ford read excerpts from several letters. Perkins claims that the readings from the letters were necessary for the purpose of impeaching Ms. Ford, and that the outcome of the second trial was affected by their exclusion.

{¶11} During cross-examination in the first trial, defense counsel presented Ms. Ford with several letters that she had written to Perkins while she was in jail. Ms. Ford acknowledged that she had written the letters and admitted that she had stated in the letters that they were both innocent of the robbery of The Medicine Shoppe. Ms. Ford was asked to read certain highlighted portions of the letters. On redirect examination, Ms. Ford affirmed that she was now telling the truth at trial, and that the statements of innocence in the letter were not the truth.

{¶12} In the second trial, defense counsel again attempted to impeach Ms. Ford through the use of her letters to Mr. Perkins. Counsel handed Ms. Ford the letters and she acknowledged that she had written them while in jail before she had changed her plea. However, when defense counsel asked her to read the highlighted portions, the State objected, arguing that the letters were hearsay and were being offered to prove the truth of the matter asserted therein.[2] The trial court sustained the objection. (Second Trial, Tr. Vol. II, p. 433). Defense counsel then continued with cross-examination:

> Q. **\*\*\* During the time that you were in jail, before you saw – before – before you decided to cooperate with the State, what was your position on the charges against you?**
>
> A. **That we were innocent.**
>
> Q. **I'm sorry?**

---

[2] Both counsel then approached the bench, but the conversation was not on the record.

**A.    That we were innocent.**

**Q.    When you say "we" who's "we"?**

**A.    [Perkins] and I.**

**Q.    How often did you express that?**

**A.    Quite a bit.  If anybody asked me I would tell them that
we were innocent.**

{¶13} On appeal, Perkins argues that defense counsel was attempting to introduce the letters to impeach Ms. Ford, and not as substantive proof of his innocence.  He claims that Perkins had a right to elicit Ms. Ford's reaction on the witness stand to the confrontation with her own prior inconsistent statements and that he had the right to have the jury observe the witness's reactions to the prior inconsistent statements.

{¶14} The admission or exclusion of evidence "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice."  *State v. Kesler*, 3d Dist. No. 13-06-09, 2006-Ohio-6340, ¶ 33.  Accordingly, our review is limited to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably.  Id., citing *State v. Barnes*, 94 Ohio St.3d, 21, 23, 2002-Ohio-68, 759 N.E.2d 1240.

{¶15} Perkins cites this Court's decision in *State v. Talbert* (1986) 33 Ohio App.3d 282, 515 N.E.2d 968, in support of his contention that the trial court's

ruling was in error because he was denied his constitutional right to confront the witness. "Pursuant to the Confrontation Clause of the Sixth Amendment to the United States Constitution, every individual accused of a crime must be provided the opportunity to cross-examine the witnesses and to provide an occasion for the jury to weigh the demeanor of that witness." *State v. Talbert,* 33 Ohio App.3d at 285, citing *Barber v. Page* (1968), 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255.

In *Talbert*, we held that the trial court's ruling had denied the defendant his right to effective cross-examination and was a prejudicial constitutional error. See id. However, we find that the facts in this case are very different and the holding in *Talbert* is not applicable to the facts in Perkin's second trial.

{¶16} The defendant in the *Talbert* case had been accused of sexual imposition. In order to attack the alleged victim's credibility, defense counsel asked if she had ever made certain statements.[3] On the witness stand and under oath, the witness denied having made those statements. Defense counsel then requested a tape recorder to play back, in front of the witness and the jury, a recording of a telephone conversation wherein the witness had made the alleged statements. The trial court denied this request. However, the next day, the trial court allowed the tape to be played to the witness outside of the presence of the jury, rather than in open court. The witness listened to the tape in chambers and

---

[3] In *Talbert*, the defense counsel sought to play a recording of the alleged victim saying she had "Talbert's ass nailed" and that "[he] (Talbert) will never put his hands on another woman." *Talbert*, at 284.

then admitted making the statements. *Talbert,* 33 Ohio App.3d at 284. This Court concluded that the trial court should have allowed defense counsel to play the tape in open court so that the jury could have seen the reaction of the witness when confronted with her own contrary statements. Id. at 285. Playing the recording of the prior inconsistent statement for the witness in the privacy of chambers eliminated this key factor. Id.

**{¶17}** The facts in the case before us now are clearly distinguishable from the situation in *Talbert*. Ms. Ford had previously testified about those same letters in the first trial, so there was no element of surprise and not likely to be any reaction. In fact, she *was* confronted with the letters in front of the jury, and defense counsel was permitted to ask her questions about them and their contents. Unlike the *Talbert* witness, Ms. Ford had not denied that she had made the statements in the letters; she acknowledged that she had. Defense counsel cross-examined her concerning the letters, and she told the jury what was in those letters and admitted that she had written statements proclaiming that they were innocent.

**{¶18}** In *State v. McKinnon*, the Seventh District Court of Appeals considered a similar challenge when defense counsel fully confronted and cross-examined the witness relative to her inconsistent statement; however, the report containing the statement was not permitted to be admitted as an exhibit. *McKinnon*, 7th Dist. No. 02 CO 36, 2004-Ohio-3359. In *McKinnon*, the court of

appeals distinguished the case from *Talbert* and determined that there was no prejudicial error because the witness's reaction to the inconsistent statement in the report was before the jury. In fact, similar to the case before us, the witness admitted she had seen the statement before. Id., at ¶71. The court of appeals stated that "in *Talbert*, the error was not necessarily in the jury's failure to hear the tape itself, but in the failure to see the witness when she was actually being impeached." Id., at ¶70.

{¶19} At Perkin's second trial, the jury was able to hear the witness describe her prior inconsistent statements and was also able to observe her reactions to being confronted with the letters containing those statements. We find that the trial court's evidentiary ruling did not violate Perkin's constitutional rights to fully confront a witness nor did it cause any material prejudice. The trial court's decision was not an abuse of discretion and Perkin's first assignment of error is overruled.

{¶20} In his second assignment of error, Perkins states that the trial court erred because the judgment entry did not state who was to receive the restitution. We agree that the judgment entry did not specify the restitution recipients.

{¶21} R.C. 2929.18 provides the guidelines for financial sanctions and the payment of restitution, and states that "(A) *** [f]inancial sanctions that may be imposed pursuant to this section include, but are not limited to, the following: (1)

Restitution by the offender to the victim of the offender's crime *** in an amount based on the victim's economic loss." The statute further specifies that "the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." R.C. 2929.18(A)(1). *State v. Portentoso*, 173 Ohio App.3d 297, 2007-Ohio-5490, 878 N.E.2d 76, ¶8; *State v. Didion*, 173 Ohio App.3d 130, 2007-Ohio-4494, 877 N.E.2d 725, ¶16. Prior to its amendment in 2004, R.C. 2929.18(A)(1) also allowed restitution to be paid to third parties, including insurance companies. See *State v. Kreischer*, 109 Ohio St.3d.391, 2006-Ohio-2706, 848 N.E.2d 496. After the statute was amended, payment of restitution was limited to those named in the statute, including the victim, the adult probation department serving the county on behalf of the victim, the clerk of courts, or another agency designated by the court. *State v. Bartholomew,* 119 Ohio St.3d 359, 363, 2008-Ohio-4080, 894 N.E.2d 307, 311, ¶8; R.C. 2929.18(A)(1).

{¶22} At the sentencing hearing, the trial court awarded specific amounts of restitution to be paid to three recipients. In the judgment entry, the trial court only ordered the total amount of restitution to be paid and failed to specify the recipients that it had named at the sentencing hearing.

{¶23} In another case involving restitution, the trial court also ordered restitution at the sentencing hearing, but did not specify the exact amount or the

recipients in its final orders. See *State v. DeLong*, 2nd Dist. No. 20656, 2005-Ohio-1905. The Second District Court of Appeals stated:

> **It is well established that the court speaks only through its journal entries, not by its oral pronouncements.** *Schenley v. Karth* **(1953), 160 Ohio St. 109, 113 N.E.2d 625. It is undisputed that the termination entry herein is blank as to the amount of restitution. The court's oral pronouncement is insufficient. Not only is the amount of restitution not journalized, but the Clerk of Court has no mechanism nor record upon which to determine to whom the restitution is to be paid.**

*DeLong*, at ¶18. The court further specified that "at a minimum, the total amount must be journalized and a cogent record must exist as to whom said amount shall be distributed." Id, at ¶19.

{¶24} Perkin's was aware of the intended recipients and the amounts due each recipient because the trial court ordered the payment of restitution at his sentencing hearing. However, the judgment entry failed to accurately reflect what occurred at the sentencing hearing and did not specify the eligible recipients of the restitution. Therefore, Perkin's second assignment of error is sustained and the matter is remanded to the trial court.

{¶25} The judgment of the Seneca County Court of Common Pleas is affirmed in part and reversed in part, and remanded for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**