[Cite as *State v. McClellan*, 2010-Ohio-314.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  1-09-21

    v.

JAMES L. MCCLELLAN,               O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2007 0033

**Judgment Affirmed**

Date of Decision:  February 1, 2010

APPEARANCES:

    *Michael J. Short* for Appellant

    *Jana E. Emerick* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, James McClellan, appeals from the judgment of the Court of Common Pleas of Allen County convicting him of having a weapon while under a disability and sentencing him to a three-year prison term. On appeal, McClellan argues that the trial court erred in failing to suppress the evidence seized as a result of the stop and search of his vehicle; that the trial court erred in finding there to be probable cause for the police officer to effectuate a traffic stop; that the trial court erred in permitting the arresting officer to testify at trial and at the suppression hearing in violation of Evid.R. 601(C); that he was denied the effective assistance of counsel; that the trial court erred in overruling his *Batson* challenge to the State's removal of a juror; and, that the trial court erred in admitting the videotape of his traffic stop into evidence at trial where it was not properly authenticated pursuant to Evid.R. 901. Based on the following, we affirm the judgment of the trial court.

{¶2} In March 2007, the Allen County Grand Jury indicted McClellan on one count of having a weapon while under a disability in violation of R.C. 2923.13, a felony of the third degree. The indictment arose from an incident whereby McClellan was stopped by a Lima police officer for failing to signal a turn, a search of the vehicle was conducted after a canine alerted to the presence of drugs in the vehicle, and a firearm was discovered pursuant to the vehicle search,

with McClellan having been previously convicted of a felony drug offense. Subsequently, McClellan entered a not guilty plea.

{¶3} In May 2007, McClellan filed a motion to suppress the weapon found in his vehicle and the statements he made to police officers subsequent to his traffic stop, arguing that the officer did not have probable cause or a reasonable articulable suspicion to effectuate the traffic stop; that the officers did not have a search warrant to search the locked briefcase inside the vehicle, in which the weapon was found; and, that the officers did not apprise McClellan of his Miranda rights prior to conducting an interrogation outside his vehicle. However, in the motion, McClellan admitted to failing to signal his turn, the basis for the traffic stop.

{¶4} In June 2007, a hearing was held on McClellan's motion to suppress, at which the following testimony was heard. Patrolman Billy Thompson from the Lima Police Department testified that he was on patrol on January 3, 2007, when he received a radio call from Officer Charles Godfrey requesting that he stop a vehicle for a "violation" (motion to suppress tr., p. 3); that Godfrey did not tell him the nature of the violation; that Godfrey needed him to stop the vehicle because he was in uniform and driving a marked police cruiser, whereas Godfrey was in an unmarked car and not in uniform; that he did not observe the violation; that, when he approached the vehicle, Godfrey verified that it was the vehicle at

issue, and he conducted a stop; that, after stopping the vehicle, he asked McClellan for his driver's license, but McClellan stated he did not have it with him; that McClellan was uncooperative in providing information and continuously asked him why he was stopped; that he explained to McClellan that an undercover officer witnessed a violation; that McClellan eventually gave his social security number; that Officer Godfrey then arrived; that they asked McClellan to step out of the vehicle because of his uncooperative actions, he patted him down for weapons, and then placed him in the back of the police cruiser; and, that subsequently, a search was conducted of the vehicle, but he was not involved in the search.

{¶5} Officer Godfrey testified on direct examination that, on January 3, 2007, he was in an unmarked vehicle, wearing plain clothes, and investigating drug activity; that, as he was in route to observe a suspected drug house, he saw Terry Cannon walking across the street from a known drug house; that, due to Cannon's history, he called to see if he had any outstanding arrest warrants; that, as he was watching Cannon while waiting for the warrant assessment, Cannon got into McClellan's vehicle; that he followed the vehicle as it drove about five or six blocks, and Cannon then exited the vehicle; that he became suspicious of the incident because it was similar to drug deals he had observed multiple times over the last five years; that he followed the vehicle as it drove away, and while he was

following, he observed the vehicle make a right turn without using a turn signal; that he called for a marked police cruiser to conduct a traffic stop of the vehicle, and Patrolman Thompson responded to the call and conducted the stop; that he approached the driver's side of the vehicle shortly after Patrolman Thompson effectuated the traffic stop and told McClellan that he was stopped because he observed him commit a traffic violation; that McClellan was unable to produce identification and continued to ask what traffic violation he committed; that he then asked McClellan to step out of the vehicle, to which McClellan responded by asking whether he was under arrest; that McClellan eventually exited the vehicle and provided his social security number; that McClellan continued to ask why he was stopped and whether he was under arrest, and he also kept putting his hands in his pockets, even after he was asked multiple times to remove them; that he told McClellan he was being detained while he wrote a ticket, and that he was going to call for a canine to conduct a drug sniff of his vehicle; that McClellan continued to ask if he was under arrest and he continued to tell him he was being detained; that McClellan then tried to walk away, so he placed McClellan in handcuffs and put him in the back of Patrolman Thompson's police cruiser; and, that he took this action for officer safety and because McClellan was a flight risk.

{¶6} Officer Godfrey further testified that Patrolman Jason Bugh then arrived with the canine and conducted a drug sniff of the vehicle; that the canine

alerted to the presence of drugs, and a search was then conducted on the vehicle, with marijuana residue found in the glove box and in the center console; that a loaded pistol was also found in an attaché case in the vehicle; that he then conducted a criminal history inquiry on McClellan, and McClellan also admitted, in response to questioning, to having a prior conviction for "narcotics" (motion to suppress hearing tr., p. 23); that McClellan was then placed under arrest; that he could not recall whether McClellan was asked about his prior conviction before or after he was arrested; that this stop was conducted outside McClellan's family's house, and McClellan's girlfriend came out and spoke with him; and, that McClellan can be heard on the videotape from the patrol car stating, "They found my gun"; "What do you expect me to ride around without it"; and, "Go to my crib, get the dope, it's in the burgundy coat, the burgundy coat, it's right here in my crib" (Id. at p. 25).

{¶7} On cross-examination, Officer Godfrey testified that McClellan told him that he picked up Cannon because he was a relative and needed a "ride" (Id. at p. 30); that, even though he believed there to be a drug transaction between McClellan and Cannon, he did not call other officers or drug units for backup; that McClellan was never Mirandized, even after being placed under arrest; that he did not have a search warrant to search the attaché case in the vehicle; and, that the

case was not locked, but he did not know whether the weapon was in plain sight because the weapon was found by Patrolman Bugh.

{¶8} Patrolman Jason Bugh of the Lima Police Department testified that, on January 3, 2007, he was called by Officer Godfrey to conduct a canine sniff for narcotics; that the dog is certified through the International Police Work Dog Association ("IPWDA") and the Ohio Peace Officer Training Academy ("OPOTA"); that, when he arrived on the scene, he walked the dog around the vehicle, and the dog alerted to the presence of narcotics at the drivers-side door; that he then conducted a search of the vehicle with the other officers; that, based upon the search, he discovered marijuana residue in the center console and in the glove box; that he also found a nine millimeter pistol in a soft-sided bag; that he was searching the bag for narcotics when he discovered the pistol; that he could not remember whether the bag was open or closed at the time; and, that the bag was in plain view but the contents were not.

{¶9} At the conclusion of the presentation of evidence, a videotape of the traffic stop, purported to be an original, was admitted into evidence, with no objection from McClellan.

{¶10} Subsequently, McClellan's trial counsel withdrew pursuant to McClellan's request, and new counsel was retained.

{¶11} In August 2007, pursuant to McClellan's oral motion, the trial court reopened the motion to suppress proceedings for further testimony based upon the fact that new counsel had been retained.

{¶12} In September 2007, a continuation of the motion to suppress hearing was held, in which McClellan moved to strike Officer Godfrey's testimony on the grounds that he was not competent to testify regarding the traffic stop because he was in an unmarked patrol car and not in uniform. The trial court, however, took the motion under advisement. Subsequently, McClellan called himself as a witness, to which the State objected. McClellan proffered his testimony that his previous trial counsel was ineffective because he did not permit him to testify at the suppression hearing despite his request. The trial court then sustained the objection on the grounds that McClellan was available as a witness at the prior hearing on the motion to suppress.

{¶13} Thereafter, Brian Estelle testified that he lived in the neighborhood where McClellan's traffic stop took place; that the stop occurred across the street from his house; that he saw the police bring in a dog that circled McClellan's vehicle four or five times; that, at one point, "the dog stopped, or something" and the police then searched the vehicle (continuation of motion to suppress hearing, tr., p. 9); and, that he could not remember if the dog ever scratched or jumped at the vehicle.

{¶14} Latoya McClellan testified that she was McClellan's first cousin; that she was in her house when McClellan's traffic stop occurred outside of the house; that she came outside and watched as the police walked the dog around McClellan's vehicle; that they walked the dog around the vehicle three times, and then an officer "threw this thing at the car and [the dog] still didn't do nothing. It just started scratching his doors" (Id. at p.14); and, that she could not recall the month when this occurred, but that it was in the summer. Subsequently, the hearing was continued due to the failure of a subpoenaed witness to appear.

{¶15} On October 11, 2007, the hearing on the motion to suppress resumed, at which time McClellan again proffered his own testimony, and the trial court again denied the testimony. However, the trial court permitted McClellan to enter a written, sworn statement as a substitute for his earlier testimony proffer at the September 2007 hearing. Thereafter, McClellan proffered a statement and DVD from Tommy's Film Works indicating that the videotape of the traffic stop taken from the police cruiser had been altered. The trial court subsequently accepted the proffer and allowed it in the record as an exhibit, but denied its admission for evidentiary purposes for the suppression hearing.

{¶16} On October 18, 2007, the trial court denied McClellan's motion to suppress, finding there to be probable cause to stop McClellan's vehicle based

upon Officer Godfrey's observance of the traffic violation.[1] Additionally, the trial court found that the officers acted reasonably in detaining McClellan in the back of the patrol car in order to gather the information necessary for the citation due to McClellan's lack of a driver's license or other form of identification; that McClellan's detention was not unreasonable in duration; that the officers did not need a reasonable suspicion of drug activity in order to conduct a canine drug sniff of the vehicle because a canine drug sniff is not considered a search under the Fourth Amendment to the United States Constitution; that there was no Fourth Amendment violation when the officers walked a drug canine around the vehicle subsequent to the lawful traffic stop; that the incriminating statements made by McClellan while in the back seat of the patrol car were unsolicited; and, that the officers had probable cause to search McClellan's vehicle based upon the fact that Cannon, known for being involved with illegal drugs, was in the vehicle for a short period of time, and that the dog alerted to the presence of drugs in the vehicle.

{¶17} On October 20, 2007, McClellan filed a motion requesting that the State furnish the original videotape taken from the patrol car on the day of his stop and arrest so that he may have it analyzed by an expert to determine its

---

[1] We note that, although the trial court found the presence of probable cause to effectuate the traffic stop, the lesser standard of reasonable articulable suspicion is all that is necessary to make an investigatory stop. See *Delaware v. Prouse* (1979), 440 U.S. 648; *Terry v. Ohio* (1968), 392 U.S. 1.

-10-

authenticity.

**{¶18}** In December 2007, the trial court granted McClellan's motion, permitting him to inspect or copy the original videotape taken from the patrol car.

**{¶19}** In January 2008, McClellan filed another motion to suppress all evidence seized from his vehicle, asserting that the videotape from the patrol car provided by the State was missing a total of three minutes and thirteen seconds as compared to another videotape he received of the stop; that part of the sections missing from the videotape included a portion of the canine sniff of the vehicle and a man exiting a vehicle across the street, who could be another potential witness in the case; and, that an analysis of the videotape revealed that parts of it were fast forwarded and blocked out.

**{¶20}** In March 2008, McClellan filed a "Notice to Court" stating that, based upon an expert analysis of the purported original videotape from the patrol car, the videotape was not an original, but a subsequent generation. Attached to the filing was a letter from McClellan's video expert, concluding that the videotape submitted by the State was not an original because of its poor quality due to being copied multiple times, the distortion present on the video, and the fact that the video is over three minutes shorter in length than other copies of videotapes from the same incident.

{¶21} Subsequently, pursuant to McClellan's request, his second trial counsel withdrew from the case, and, in April 2008, McClellan retained new counsel.

{¶22} In May 2008, McClellan filed a renewed motion to suppress, a motion for contempt, a motion to dismiss for speedy trial violations, and a motion to dismiss for due process violations, asserting, in part, that the evidence seized as a result of the stop and search of his vehicle must be suppressed because of his prior attorney's ineffective assistance in preventing him from testifying at the motion to suppress hearing and conceding that he did not use his turn signal when he, in fact, did use a proper turn signal; because his attorney was ineffective in failing to impeach Officer Godfrey at the suppression hearing about his statement that he detained McClellan in order to ascertain his identity; because Patrolman Thompson, the officer who conducted the stop of McClellan's vehicle, did not have probable cause to conduct the stop because he was not given information from Officer Godfrey regarding the nature of the alleged traffic violation; and, because the traffic stop was the result of prohibited selective enforcement. Furthermore, McClellan argued, in part, that the testimony of Officer Godfrey should be stricken because he was incompetent to testify regarding the citation, as he was not in uniform and in a marked patrol car pursuant to R.C. 4549.14; that the evidence seized from his vehicle and any statements he made to the officers

must also be suppressed on the grounds that his detention was unreasonable under the United States and Ohio Constitutions, as Officer Godfrey knew his identity prior to making the stop and did not need to detain him in order to discover this information; that the State must be held in contempt for failing to comply with discovery rules and for failing to provide the original videotape from the traffic stop, as the defense expert concluded that the videotape submitted by the State was not the original; that the indictment should be dismissed for a violation of federal and state speedy trial rights due to delays caused by the State's failure to provide proper discovery; and, that the indictment should be dismissed due to a due process violation in the form of the State's destruction or loss of material exculpatory evidence, specifically, the original videotape from the patrol car.

{¶23} In July 2008, the trial court denied McClellan's renewal of the motion to suppress, stating that he raised similar arguments to the first motion, except for the additional argument pertaining to the altered videotape, but because McClellan stipulated to the admission of the videotape at the suppression hearing, and because the motion had already been ruled upon, the renewal motion was barred by res judicata. Furthermore, the trial court also denied McClellan's motion arguing that his counsel was ineffective; that the length of his detention warranted the suppression of evidence; that the State should be held in contempt for failing to provide the original videotape from the traffic stop; and, that the

indictment must be dismissed due to a violation of his right to a speedy trial and a violation of due process. Specifically, the trial court found that McClellan's various motions and changes in trial counsel tolled the time for speedy trial, and that there was no evidence demonstrating that the State destroyed any material, exculpatory evidence. Additionally, the trial court stated the following in its judgment entry:

> **With regard to the cruiser videotape, the Due Process Clause of the United States Constitution does not require the state to employ particular investigative techniques to the defendant's liking. \* \* \* Therefore the State did not even need to video tape the stop of defendant. All of the defendant's arguments regarding the cruiser tape are based upon defendant's *assumption* that the videotape that was admitted into evidence at the suppression hearing was somehow altered and is not the original cruiser tape. Defendant argues that the "destroyed" or "edited" portions might be favorable to him. Defendant says his expert can show that the video admitted into evidence at the suppression hearing is not the original. Even if the Court believed the expert's testimony could establish such a fact, that opinion might be pertinent to the admissibility of the exhibit at trial, but does not require dismissal. (The exhibit was admitted by stipulation at the suppression hearing). Defendant says the expert can show that the video was edited to take out parts favorable to him. This is nothing but pure speculation. Even if the expert could show the video is not an original, there is no way for the expert to say what the content of the original was. The Due Process Clause is not violated when the state fails "to preserve potentially useful evidence" "unless a criminal defendant can show bad faith on the part of the police." \* \* \* Defendant has had months to establish bad faith on the part of police and has not presented anything but self-serving speculation as part of his continual efforts to delay this case.**
>
> **\* \* \***

> **Officer Godfrey has already testified that the video is blurry. The defendant is free to cross examine Godfrey, if he testifies at trial, or any State's witness that testifies, as to the content and quality of the video, bring in his expert at trial to attack the originality or admissibility of the tape, if proffered as an exhibit by the State, and to argue that the videotape *might* have been exculpatory. The state, however, has no constitutional duty to ensure that defendant's traffic stop was recorded on video or audio tape.**

(Emphasis in original.)  (Citations omitted.)  (July 2008 Judgment Entry, pp. 6-8).

{¶24} In July 2008, McClellan's third different trial counsel withdrew from the case, and, in August 2008, the trial court appointed new trial counsel and continued the trial date.

{¶25} In October 2008, McClellan's fourth different trial counsel withdrew from the case pursuant to McClellan's request, and new trial counsel was appointed.

{¶26} In January 2009, the case proceeded to a jury trial.  During voir dire, the State exercised a peremptory challenge to excuse an African-American woman from the venire, and McClellan subsequently raised a *Batson* challenge, arguing that the woman was dismissed on the impermissible basis of race.  Subsequently, the trial court overruled the challenge, finding that the dismissal was racially neutral, in that the woman's sister had a prior conviction for the sale and possession of narcotics, and some of the same police officers involved in that case were also involved in the present case.

**{¶27}** During the presentation of evidence, Officer Godfrey testified to the events of McClellan's traffic stop and arrest. During his testimony, the videotape from the traffic stop was played before the jury, with Officer Godfrey identifying the videotape as the same videotape collected from his vehicle on the day of McClellan's arrest and stating that it depicted the events as he described them.

**{¶28}** After the State's presentation of evidence, McClellan renewed his objection to the admission of the State's exhibits, including the videotape of the traffic stop, on the grounds that the evidence was the product of an illegal stop and search of his vehicle, and that the evidence was not properly maintained after collection. The trial court then overruled the objection and admitted all of the State's exhibits, including the videotape from the traffic stop.

**{¶29}** Subsequently, Edward Primo testified on direct examination that he owns an audio and video production company; that he reviewed what was purported to be the original videotape from the traffic stop in this case, the same tape submitted into evidence; that, initially, he was not able to get the video to play, but, by using various techniques, he was able to view the images on the tape; that he compared the video to copies of the traffic stop he received from the previous attorney in the case and detected "several anomalies" (trial tr., vol. 3, p. 487); that the purported original videotape was lower in quality than the copy, the image on the original was weaker than the copy, the original was around three

minutes shorter in length than the copy, and there were different time and date stamps at the beginning and end of the original videotape; that the date stamp on the original videotape changed to 2006 forty-five minutes after the traffic stop, and then subsequently changed to 2005; that, when a videotape is copied, the images become less clear; and, that, based upon all of these facts, he believed that the purported original videotape was actually a copy.

{¶30} On cross-examination, Primo testified that he was aware that videotapes taken from police cruisers were taken from the vehicles for thirty days and then placed back into circulation; that he was aware that the videotape he examined had been in circulation at the Lima Police Department for several years; that, "if that tape was recycled in 2006 [he] would expect to see a whole 2006 recording instead of a piece from 2007 in the middle of it" (Id at p. 497); and, that he expected to see the rest of the eight-hour shift from the day of McClellan's traffic stop because he was told by another law enforcement officer that it would be on the videotape, but he discovered that McClellan's traffic stop was the only part of that day on the videotape.

{¶31} Subsequently, the jury convicted McClellan on the one count of having a weapon while under a disability, and he was sentenced to a three-year prison term.

{¶32} It is from his conviction and sentence that McClellan appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE RETRIEVED AS A RESULT OF THE STOP AND SEARCH OF THE DEFENDANT'S AUTOMOBILE.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN FINDING THAT THERE WAS PROBABLE CAUSE TO STOP THE DEFENDANT'S VEHICLE.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED IN PERMITTING THE TESTIMONY OF OFFICER GODFREY AT THE SUPPRESSION HEARING AND TRIAL.**

*Assignment of Error No. IV*

**THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.**

*Assignment of Error No. V*

**THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S BATSON CHALLENGE.**

*Assignment of Error No. VI*

**THE TRIAL COURT ERRED IN ADMITTING THE VIDEOTAPE OF THE TRAFFIC STOP INTO EVIDENCE.**

{¶33} Due to the nature of McClellan's arguments, we elect to address his first two assignments of error together.

*Assignments of Error Nos. I and II*

**{¶34}** In his first assignment of error, McClellan asserts that the trial court erred in failing to suppress the evidence obtained from the search of his vehicle. Specifically, McClellan contends that, because the search of his vehicle was incident to his arrest, the police officers were only permitted to search if they had a reasonable belief that the vehicle would contain evidence of the crime for which he was arrested, or they were only permitted to search within reaching distance of the passenger compartment of the vehicle as set forth in the United States Supreme Court decision of *Arizona v. Gant* (2009), ___ U.S. ___, 129 S.Ct. 1710. McClellan further argues that, because he was arrested for failure to properly signal a turn and his vehicle could not contain evidence of that crime, and because the police searched beyond the reaching distance of the passenger compartment, the search was unreasonable under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, and the evidence must be suppressed.

**{¶35}** In his second assignment of error, McClellan argues that the trial court erred in finding there was probable cause for his traffic stop and in failing to suppress all evidence seized as a result of the stop. Specifically, he contends that Officer Thompson did not have probable cause to stop his vehicle where he was

merely instructed by Officer Godfrey to effectuate the stop, and where he did not have personal knowledge of the facts supporting the stop.

*Standard of Review*

{¶36} A review of the trial court's ruling on a motion to suppress presents mixed questions of law and fact. *State v. Dudli,* 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶12, citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117. When deciding a motion to suppress, the trial court is the trier of fact and judges the credibility of witnesses and determines the weight to be given to the evidence. *State v. Johnson* (2000), 137 Ohio App.3d 847, 850. Therefore, when reviewing a trial court's decision on a motion to suppress, the appellate court must accept the trial court's findings of facts, provided they are supported by competent, credible evidence. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, ¶100, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20. The appellate court then reviews the trial court's application of the law to the facts de novo. *Roberts,* supra, citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8.

*Constitutional Requirements of a Vehicle Stop and Search*

{¶37} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, and require the suppression of any evidence seized as a result of an unreasonable search and seizure. *Mapp v. Ohio* (1961), 367 U.S. 643, 649; *State*

*v. Jones,* 88 Ohio St.3d 430, 434, 2000-Ohio-374, overruled on other grounds by *State v. Brown,* 99 Ohio St.3d 323, 2003-Ohio-3931.

{¶38} To determine the constitutionality of a traffic stop, the reviewing court must consider whether the police officer had a sufficient articulable suspicion of criminal activity by evaluating the objective facts surrounding the stop. *State v. Vlachos*, 3d Dist. No. 17-08-24, 2009-Ohio-915, ¶¶10-11, citing *State v. Bobo* (1988), 37 Ohio St.3d 177, 179; *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 1996-Ohio-431. A police officer's testimony alone is sufficient to establish reasonable articulable suspicion for a stop. See *State v. Claiborne*, 2d Dist. No. 19060, 2002-Ohio-2696. Additionally, "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution * * *." *Erickson*, 76 Ohio St.3d at 11. Probable cause is defined as "a reasonable ground for belief of guilt," *State v. Moore,* 90 Ohio St.3d 47, 49, 2000-Ohio-10, quoting *Carroll v. United States* (1925), 267 U.S. 132, 161, and is determined by "examining the historical facts, i.e., the events leading up to a stop or search, 'viewed from the standpoint of an objectively reasonable police officer.'" *Bowling Green v. Godwin,* 110 Ohio St.3d 58, 2006-Ohio-3563, ¶14, quoting *Ornelas v. United States* (1996), 517 U.S. 690, 696. Moreover, a finding

of probable cause is fact-specific and turns upon what the officer knew at the time he conducted the traffic stop. *Erickson,* 76 Ohio St.3d at 10.

{¶39} However, where a police officer conducts a traffic stop at the request of another officer, it is the knowledge of the requesting officer that determines the presence of articulable suspicion or probable cause.

> **A police officer need not always have knowledge of the specific facts justifying a stop and may rely, therefore, upon a police dispatch or flyer. \* \* \* This principle is rooted in the notion that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." \* \* \* When a dispatch is involved, therefore, the stopping officer will typically have very little knowledge of the facts that prompted his fellow officer to issue the dispatch. The United States Supreme Court has reasoned, then, that the admissibility of the evidence uncovered during such a stop does not rest upon whether the officers *relying upon a dispatch or flyer* "were themselves aware of the specific facts which led their colleagues to seek their assistance." It turns instead upon "whether the officers who *issued* the flyer" or dispatch possessed reasonable suspicion to make the stop.**

(Emphasis in original.) (Citations omitted.) *Maumee v. Weisner* 87 Ohio St.3d 295, 297, 1999-Ohio-68.

{¶40} Furthermore, the United States and Ohio Constitutions generally require a warrant before conducting a search, but a warrantless search of an automobile is permissible where the search is based upon probable cause that the vehicle contains contraband. *Maryland v. Dyson* (1999) 527 U.S. 465, 466-467;

*State v. Blevins*, 3d Dist. No. 9-06-40, 2007-Ohio-6972, ¶39, citing *Moore*, 90 Ohio St.3d 47. Additionally, "'[w]here police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that may logically conceal the object of the search.'" *Blevins,* 2007-Ohio-6972, at ¶41, quoting *State v. Welch* (1985), 18 Ohio St.3d 88, syllabus.

**{¶41}** In *State v. Murrell*, 94 Ohio St.3d 489, 2002-Ohio-1483, the Supreme Court of Ohio found that, pursuant to the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, a police officer who has made a lawful custodial arrest of an individual may search the passenger compartment of his automobile as a "contemporaneous incident of that arrest." *Murrell*, 94 Ohio St.3d 489, at syllabus, citing *New York v. Belton* (1981), 453 U.S. 454, 460. However, in *Gant,* 129 S.Ct. 1710, the United States Supreme Court limited automobile searches incident to a lawful arrest, as set forth in *Belton*, by requiring that these searches be restricted to the reaching distance of the passenger compartment of the vehicle when the individual is unsecured, or where the police have a reasonable belief that evidence of the crime for which the individual was arrested may be found in the vehicle.

> **[O]ur opinion [in *Belton*] has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search. * * * Accordingly, we reject this**

> **reading of *Belton* and hold that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. Although it does not follow from *Chimel,* we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."**

(Citations omitted.) *Gant*, 129 S.Ct. at 1718-1719.

*The Stop of McClellan's Vehicle*

{¶42} In the case at bar, McClellan was cited for failure to signal a turn.

R.C. 4511.39 governs this offense, and provides, in pertinent part:

> **(A) No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.**
>
> **When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning * * *.**
>
> **\* \* \***
>
> **Any stop or turn signal required by this section shall be given either by means of the hand and arm, or by signal lights that clearly indicate to both approaching and following traffic intention to turn or move right or left * * *.**

{¶43} Patrolman Thompson conducted the traffic stop of McClellan. At the

suppression hearing, he testified that he conducted the stop pursuant to Officer

Godfrey's request, as Godfrey was not in uniform and was in an unmarked patrol car, whereas he was in uniform and driving a marked police cruiser, and that Godfrey did not inform him of the reason for the stop. Furthermore, Officer Godfrey testified that he observed McClellan make a right turn without using a turn signal.

**{¶44}** Accordingly, although Patrolman Thompson did not have probable cause himself to conduct the traffic stop, he relied upon Officer Godfrey's request for the stop, and Officer Godfrey had probable cause to believe that a traffic violation was committed, as he observed McClellan's turn without the use of a turn signal. Consequently, we find the trial court did not err in denying McClellan's motion to suppress on the grounds that probable cause existed to conduct the traffic stop.

*The Search of McClellan's Vehicle*

**{¶45}** Here, Officer Godfrey testified that he observed McClellan pick up a man whom he knew to have had prior contact with the police; that McClellan drove a few blocks with the man in the vehicle, and the man subsequently got out of the vehicle; that this activity was similar to many drug deals he observed in the past; that this took place while he was patrolling in an area of town that was known for drug deals; that, after McClellan was stopped for the turn signal violation, he was uncooperative in providing personal information; that, due to his

uncooperativeness, he was placed in handcuffs in the back of the police cruiser; that a canine was called to the scene and alerted to the presence of narcotics in McClellan's vehicle; and, that a subsequent search of the vehicle revealed a small amount of marijuana and a handgun inside of an attaché case.

{¶46} "[E]xamining [these] historical facts * * * 'viewed from the standpoint of an objectively reasonable police officer[,]'" *Godwin,* 110 Ohio St.3d 58, at ¶14, we find that the search of McClellan's vehicle was based upon probable cause and was not merely a search incident to an arrest, such that the rule announced in *Gant* is applicable. It is clear from Officer Godfrey's testimony that there were reasonable grounds to believe that a drug deal had occurred, given the short distance which McCellan drove with another man in his vehicle, the fact that the incident occurred in an area known for drug deals, and the fact that a dog alerted to the presence of drugs in McClellan's vehicle. Accordingly, when searching McClellan's vehicle, the police were not limited to searching an area within the reaching distance of the passenger compartment or searching only if they had a reasonable belief that evidence related to McClellan's arrest would be found. The search of the vehicle based upon probable cause permitted the police to search anywhere in the vehicle where the drugs may be found, "including all movable containers and packages, that may logically conceal the object of the search." *Blevins,* 2007-Ohio-6972, at ¶41. Consequently, we find the rule

announced in *Gant* to be inapplicable and that the trial court did not err in failing to suppress the evidence seized as a result of the search of McClellan's vehicle.

{¶47} Accordingly, we overrule McClellan's first and second assignments of error.

*Assignment of Error No. III*

{¶48} In his third assignment of error, McClellan argues that the trial court erred in permitting the testimony of Officer Godfrey at trial and the suppression hearing. Specifically, he contends that, because Officer Godfrey was not in uniform or driving a marked patrol car at the time of the traffic stop, he was not permitted to testify about the stop pursuant to Evid.R. 601(C). We disagree.

{¶49} An appellate court reviews the trial court's decision on the admission of evidence for an abuse of discretion. *State v. Heft*, 3d Dist. No. 8-09-08, 2009-Ohio-5908, ¶62, citing *State v. Issa,* 93 Ohio St.3d 49, 64, 2001-Ohio-1290. Accordingly, an appellate court will not disturb a trial court's evidentiary decision unless the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Barnes,* 94 Ohio St.3d 21, 23, 2002-Ohio-68. When applying an abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Nagle* (2000), 11th Dist. No. 99-L-089, 2000 WL 777835.

{¶50} Evid.R. 601(C) provides as follows:

**Every person is competent to be a witness except:**

**\* \* \***

**(C) An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute.**

{¶51} Additionally, R.C. 4549.14 provides a similar standard as to when an officer is incompetent to testify as a witness. It provides:

**Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code.**

{¶52} The phrase "while on duty for the exclusive or main purpose of enforcing traffic laws" contained in Evid.R. 601(C) and similar language in R.C. 4549.14 refers to "the officer's main purpose for his whole period of duty and not to his duty during the apprehension and arrest of the suspect." *State v. Huth* (1986), 24 Ohio St.3d 114, 116, citing *Columbus v. Stump* (1974), 41 Ohio App.2d 81, 85.

{¶53} Here, Officer Godfrey testified that he was on patrol in an unmarked police cruiser and that he was not wearing a police uniform. However, he also

testified that he was on duty that day to observe activity at a suspected drug house. Accordingly, we find that Evid.R. 601(C) and R.C. 4549.14 did not apply to bar Officer Godfrey from testifying regarding the traffic stop, as he was not on duty at the time to enforce traffic laws, but was conducting surveillance and merely happened to observe potential drug activity and a subsequent traffic violation.

{¶54} Accordingly, McClellan's third assignment of error is overruled.

*Assignment of Error No. IV*

{¶55} In his fourth assignment of error, McClellan argues that he was denied the effective assistance of counsel. First, he contends that his trial counsel at the suppression hearing was ineffective when he failed to permit him to testify, when he admitted that McClellan failed to use his turn signal, and when he did not object to the admission of the videotape of the traffic stop. Second, he also contends that his trial counsel was ineffective by failing to object to a venire containing only three African-Americans, thereby prejudicing his right to a fair trial. We disagree.

{¶56} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there

exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy* (1992), 63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized by *State v. Smith*, 80 Ohio St.3d 89, 103, 1997-Ohio-355.

{¶57} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Malone* (1989), 2d Dist. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id., quoting *Smith v. Murray* (1986), 477 U.S. 527.

{¶58} An attorney's decision pertaining to matters of trial strategy is an insufficient basis for an ineffective assistance claim. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶101, citing *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, ¶45. Specifically, trial counsel's failure to raise an objection, alone, does not constitute ineffective assistance, *State v. Turks*, 3d Dist. No. 1-08-44, 2009-Ohio-1837, ¶43, citing *Conway*, 109 Ohio St.3d 412, at ¶103, and trial counsel's decision on whether to call the defendant as a witness is generally within the purview of trial strategy and is not an adequate basis for an ineffective

assistance claim unless prejudice can be affirmatively established. *State v. Solomon*, 3d Dist. No. 9-03-58, 2004-Ohio-2795, ¶23, citing *State v. Adkins* (2001), 144 Ohio App.3d 633, 646. Furthermore, "'trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance.'" *State v. Tosco*, 3d Dist. No. 9-08-21, 2009-Ohio-408, ¶36, quoting *State v. Sallie,* 81 Ohio St.3d 673, 675, 1998-Ohio-343.

**{¶59}** Here, McClellan had five different trial counsels throughout the proceedings, and claims that his counsel at the suppression hearing and at trial rendered ineffective assistance. With regard to his argument that his trial counsel was ineffective for failing to object to the admission of the videotape of the traffic stop at the suppression hearing, we find that, even if this was error, no prejudice resulted. The videotape was only admitted at the suppression hearing for the limited purpose of determining whether the evidence seized as a result of the stop and search of McClellan's vehicle should be suppressed, and the trial court had sufficient evidence solely based upon the testimony of the officers that the stop and search of the vehicle was constitutional. Furthermore, the trial court allowed the videotape into evidence at trial despite McClellan's argument as to its admissibility. Accordingly, even if trial counsel would have raised an objection to the videotape at the original suppression hearing, it seems improbable that the trial court would have then found the videotape to be inadmissible. Consequently, it

cannot be said that the outcome of the trial would have been different if trial counsel would have raised an objection at the suppression hearing.

**{¶60}** McClellan also argues that his trial counsel was ineffective for admitting that McClellan failed to use his turn signal. Yet, the only way in which this admission would prejudice his case is if the trial court would have suppressed the stop and search of McClellan's vehicle in the absence of this admission. However, because Officer Godfrey testified to McClellan's failure to use a turn signal, the trial court had a sufficient basis for a finding of probable cause to stop the vehicle even in the absence of the admission. Accordingly, any error of trial counsel was not prejudicial.

**{¶61}** McClellan further contends that trial counsel was ineffective in failing to permit him to testify at the suppression hearing. However, although the record does reflect that subsequent trial counsel argued that McClellan was prevented from testifying by his trial counsel at the initial suppression hearing, the record from the initial suppression hearing does not reflect that McClellan actually requested to testify and that his attorney rejected his request. Accordingly, we must presume that trial counsel made a tactical decision not to call McClellan to testify, thereby placing this matter in the category of trial strategy and outside the scope of a valid ineffective assistance claim. See *Solomon*, 2004-Ohio-2795, at ¶23. Furthermore, in the sworn statement entered by McClellan as a proffer for

his testimony, the only disputed facts regarding the traffic stop were that he did use his turn signal and that the dog did not signal for drugs in his vehicle until after the police officer threw something at his vehicle. While these facts are in direct conflict with testimony presented by the State at the suppression hearing, it is unlikely that the trial court would have suppressed the evidence on the basis of this self-serving testimony. Consequently, we find that trial counsel's failure to call McClellan to testify does not create the prejudice necessary to prevail on an ineffective assistance claim.

{¶62} Finally, McClellan argues that trial counsel was ineffective in failing to object to a venire containing only three African-Americans. While the Sixth Amendment to the United States Constitution guarantees a defendant the right to have a jury drawn from a representative cross section of the community, *Taylor v. Louisiana* (1975), 419 U.S. 522, 527; *State v. Fulton* (1991), 57 Ohio St.3d 120, fn 1, in order to establish a violation of this requirement, the defendant must prove "'(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process.'" *State v. Harrington*, 4th Dist. No. 05CA3038, 2006-Ohio-4388, ¶31, quoting *Fulton*, 57 Ohio St.3d 120, at

paragraph two of the syllabus. Furthermore, there is no affirmative right to a jury composed of a particular racial composition. *U.S. v. Mack* (C.A.6, 1998) 159 F.3d 208, 219, citing *Taylor*, 419 U.S. at 538. Here, McClellan fails to assert how the venire was not fair and reasonable in relation to the racial composition of the community, and that having only three African-Americans on the venire was the result of their systematic exclusion. Consequently, because he cannot show that trial counsel would have had any chance of success by raising such an objection, he cannot demonstrate the prejudice necessary to prevail on this ineffective assistance claim.

{¶63} Accordingly, we overrule McClellan's fourth assignment of error.

*Assignment of Error No. V*

{¶64} In his fifth assignment of error, McClellan argues that the trial court erred in overruling his objection to the State's use of its peremptory challenge to remove a potential juror on the basis of race. Specifically, he contends that the State's race-neutral explanation for the potential juror's dismissal was not sufficient and that the trial court should have permitted further questioning into the potential juror's ability to serve. We disagree.

{¶65} A trial court's finding that the State did not exercise its challenges with a discriminatory intent will not be reversed on appeal absent a determination

that the trial court's finding was clearly erroneous.  *State v. Hernandez* (1992), 63 Ohio St.3d 577, 583, citing *Hernandez v. New York* (1991), 500 U.S. 352.

{¶66} In *Batson v. Kentucky* (1986), 476 U.S. 79, the United States Supreme Court found there to be a violation of the equal protection clause when a peremptory challenge is utilized to strike a juror on the basis of race.  Furthermore, "*Batson* delineated a three-step procedure for evaluating claims of racial discrimination in peremptory strikes.  'First, the opponent of the strike must make a prima facie showing of discrimination.  Second, the proponent must give a race-neutral explanation for the challenge.  Third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful racial discrimination.'" *State v. Douglas*, 3d Dist. No. 9-05-24, 2005-Ohio-6304, ¶29, quoting *State v. White*, 85 Ohio St.3d 433, 436, 1999-Ohio-281, citing *Batson,* 476 U.S. at 96-98.  Moreover, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359.

{¶67} In regards to the third step of the *Batson* test, the Ohio Supreme Court has stated as follows:

> **[T]he trial court may not simply accept a proffered race-neutral reason at face value, but must examine the prosecutor's**

**challenges in context to ensure that the reason is not merely pretextual. "[T]he rule in *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it." * * * If the trial court determines that the proffered reason is merely pretextual and that a racial motive is in fact behind the challenge, the juror may not be excluded.**

(Citations omitted.) *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶65, quoting *Miller-El v. Dretke* (2005), 545 U.S. 231, 251-252.

**{¶68}** In the case sub judice, McClellan objected to the State's exercise of a peremptory challenge to excuse an African-American woman from the venire. In response to McClellan's objection, the following discussion took place:

**State: I would indicate to the Court that the reason the State opted to exercise a peremptory on her is because she indicated that she has a family member that has been convicted of drugs, and specifically naming Easter Brownlow. As the Court may, or may not, remember that was a long-term investigation by the Lima Police Department's P.A.C.E. unit and resulting in a jury trial in that case wherein Ms. Brownlow was convicted and sentenced to twenty-five plus years in prison and involving offenses with the sale and/or possession of cocaine and crack cocaine. A couple of things of note there, Judge. First of all, two of the witnesses that will be testifying in this case are members, or were at the time, of the P.A.C.E. unit, the same unit that investigated and prosecuted Ms. Smith's sister. Secondly, the prior of Mr. McClellan's that will be introduced into evidence in this trial includes a trafficking in crack cocaine conviction. Also, I want to point out to the Court that now-Sergeant Godfrey was the lead investigator in that case and actually sat at the table during trial. So, that's a concern as well. He, as the Court knows from the suppression hearing, is a key witness in this hearing here today. That would be the reason we dismiss her.**

\* \* \*

**McClellan's Trial Counsel: Your Honor, I think we should call Mrs. Smith back for further inquiry. \* \* \* There was no inquiry, I don't believe, by either of us as to whether or not that particular circumstance would make her, that is, Mrs. Smith, unable to be fair, neutral, unbiased, and impartial in this case. \* \* \* But, given the close relationship of her sister, apparently a notorious Lima drug case investigated by the P.A.C.E. unit and with the lead investigator being the same investigator, Investigator/Sergeant Godfrey, who sits here, I think we need some more inquiry of Mrs. Smith to determine whether or not that connection rises to the level of a race-neutral peremptory challenge exercise.**

**Trial Court: Well, the Court's going to deny the request to have further questioning. I think your argument \* \* \* might be a little more well taken in terms of bringing her back in for inquiry if this was a challenge for cause. \* \* \* The explanation that the State has offered is the fact that Mrs. Smith, by her own answers, has disclosed that she is a sister to one Easter Brownlow who, as the State has indicated, because of the past record of Easter Brownlow, having nothing to do with her race or the race of Mrs. Smith, the fact that they're just sisters, is their reason. \* \* \* If it's a sister, well, it's facially race-neutral. I find that the opponent [sic], in this case the defendant, of the peremptory challenge has not proven purposeful racial discrimination.**

(Trial tr., Vol. 2, pp. 223-227).

{¶69} Even if we were to find that McClellan was able to make a prima facie case of discrimination, the record clearly demonstrates that the State's exercise of its peremptory challenge was exclusively for race-neutral reasons, as this potential juror's sister was convicted of drug-related offenses due to the investigations of some of the same officers who were involved in McClellan's

case. Furthermore, once the State has offered a race-neutral explanation and the trial court has determined there to be no purposeful discrimination, no further inquiry into the ability of the potential juror to be fair and unbiased is necessary. Consequently, we find that the trial court's denial of McClellan's motion was not clearly erroneous.[2]

{¶70} Accordingly, we overrule McClellan's fifth assignment of error.

*Assignment of Error No. VI*

{¶71} In his sixth assignment of error, McClellan argues that the trial court erred in admitting the videotape of the traffic stop into evidence at trial. Specifically, he asserts that, because the expert testimony he presented demonstrated that the videotape was not authentic, the tape should not have been admitted pursuant to Evid.R. 901. We disagree.

{¶72} We review the trial court's admission of evidence under an abuse of discretion standard, as set forth in our disposition of McClellan's third assignment of error. *State v. Kessler*, 3d Dist. No. 13-06-09, 2006-Ohio-6340, ¶33.

{¶73} Evid.R. 901 provides for the authentication or identification of evidence prior to its admissibility. The rule provides, in pertinent part:

> **The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.**

---

[2] We further note that this juror would have been an alternate, and that the eventual alternate juror selected did not participate in the deliberation of this case, thereby making any potential error harmless.

Evid.R. 901(A). Furthermore, a videotape is properly admitted into evidence upon a showing that it accurately depicts what the proponent claims it to depict, *Bryant v. Terry*, 9th Dist. No. 20140, 2001 WL 324389, citing *Midland Steel Prods. Co. v. U.A.W. Local 486* (1991), 61 Ohio St.3d 121, 129, and any quality problems in the videotape go to its weight, not to its admissibility. *State v. Benson*, 11th Dist. No. 2001-P-0086, 2002-Ohio-6942, ¶17.

**{¶74}** Here, Officer Godfrey testified that the videotape, although poor in quality, depicted the events of the traffic stop as he described them. Although McClellan's expert, Edward Primo, testified that the videotape appeared to be a copy from the original and that a few minutes of the traffic stop were missing, at no point did Primo testify that the videotape did not depict the traffic stop. Instead, Primo actually compared the videotape played at trial to other copies of the traffic stop he received, and only disputed that the videotape was shorter in length and of worse quality than the other copies, not that it inaccurately portrayed the traffic stop. Furthermore, Evid.R. 1003 provides that a duplicate is admissible to the same extent as an original unless there is a question raised as to its authenticity or unless it would be unfair to admit the duplicate in lieu of the original. See *State v. Garcia*, 3d Dist. No. 5-01-12, 2001-Ohio-2262. Even if McClellan did raise a question as to the authenticity of the videotape, he only questioned whether the videotape had been shortened in length and distorted in

quality, not whether the content had been altered to depict a different series of events. Therefore, we find that the issues McClellan asserted in regards to the videotape pertained to the weight of the evidence, and not its admissibility, and, consequently, that the trial court did not abuse its discretion in admitting the videotape into evidence.

{¶75} Accordingly, we overrule McClellan's sixth assignment of error.

{¶76} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**